665 So.2d 1071 (1995)
SCRIPPS HOWARD CABLE COMPANY d/b/a Lake County Cablevision, Appellant,
v.
Ed HAVILL, as the Property Appraiser for Lake County, Florida, et al., Appellees.
Nos. 94-731, 94-1301.
District Court of Appeal of Florida, Fifth District.
December 1, 1995.
Rehearing Denied January 12, 1996.
*1073 Jerry R. Linscott and Denis L. Durkin and Lea Ann Banks of Baker & Hostetler, Orlando, for Appellant.
Gaylord A. Wood, Jr. of Wood & Stuart, P.A., Ft. Lauderdale, for Appellee Ed Havill, as Lake County Property Appraiser.
Robert A. Butterworth, Attorney General, and Lee R. Rohe, Assistant Attorney General, Tallahassee, for Appellee State of Florida, Department of Revenue.
GOSHORN, Judge.
Scripps Howard Cable Company, d/b/a Lake County Cablevision, appeals the final judgment in favor of Ed Havill, Lake County Property Appraiser, T. Keith Hall, Lake County Tax Collector, and Thomas Herndon, Executive Director of the Florida Department of Revenue. The judgment was entered in Scripps Howard's action contesting the ad valorem tax assessments of its tangible personal property for the years 1989 through 1992. Scripps Howard contests the property to be appraised and the method used to determine the value of that property. Simply put, Scripps Howard believes that the cost method of valuation should be used to value its tangible personal property. Havill urges the value of Scripps Howard's personal property is the same as Scripps Howard's value as a business or going concern.

FACTS
Scripps Howard is the owner of a cable television business. It purchases programming and sells its program choices to its subscribers. It uses microwave antennae, broadcast antennae, VHT antennae, and a satellite receiving dish to receive the signals from broadcast television stations and satellites. The signals are then sent by cable to signal processing centers, which are called "head-ends." Scripps Howard has eight headends in Lake County. Headend equipment consists of a processor and modulator for each broadcast signal and a video cipher, descrambler, and processor for each cable signal. The signals are then sent through large trunk cables to major distribution points. Distribution cables carry the signals from the major distribution points to the neighborhoods Scripps Howard serves. There are roughly two amplifiers per mile along the distribution cables to boost the signal. The line which carries the signal from the distribution cable to each subscriber's house is called a "house drop." In addition to the equipment used in the above described tasks, Scripps Howard owns trucks and associated business equipment in its business.
The following table shows the valuations of Scripps Howard's personal property reached according to three different appraisals:

 Scripps Howard Kane Reece[1] Havill
 January 1, 1989 $8,603,400 $10,100,837 $14,999,454
 January 1, 1990 $8,819,700 $ 9,015,630 $17,190,856
 January 1, 1991 $8,614,169 $ 8,622,564 $19,170,796
 January 1, 1992 $9,600,284 $ 8,582,560 $21,590,700

The original 1989 assessed value of Scripps Howard was $8,603,400. This figure was based on an understanding that tangible personal property would be assessed on a per customer basis, as had been the practice since 1976. In mid 1990, Robert Ross, the Deputy Property Appraiser acting under Havill, reassessed the property using the income/unit-rule approach. The reassessment increased the assessed value to $14,999,454. Havill thereafter continued to appraise Scripps Howard's tangible personal property using the income approach. Interestingly, the six other cable television companies operating in Lake County are assessed using the cost less depreciation method. Only a phone company and an electric company are assessed in Lake County by the method used to assess Scripps Howard. Scripps Howard unsuccessfully challenged the assessment of its property in the circuit court and appeals from the final judgment rendered against it.

APPRAISER'S DETERMINATION OF VALUE
As an initial matter, we acknowledge that we are governed by the longstanding *1074 principle that the appraiser's determination of just value must be upheld if it was lawfully reached and if it is supported by any reasonable hypothesis of legality. Blake v. Xerox Corp., 447 So.2d 1348 (Fla. 1984). A tax assessment is presumed correct, Walker v. Smathers, 507 So.2d 1207 (Fla. 4th DCA 1987), and if the assessor reaches the right result using the wrong method, no ground for reversal exists. Bystrom v. Whitman, 488 So.2d 520 (Fla. 1986) (holding that the core issue in a tax assessment challenge is the amount of the assessment, not the method used to reach the valuation, and that an appraiser may reach a correct result for the wrong reason).

IMPROPER INCLUSION OF FRANCHISE VALUE
Scripps Howard contends that the appraisal figures determined by the appraiser's office were not reached lawfully based on Ross's admission that he considered the franchise in his assessment of Scripps Howard's personal property. Section 199.185(1) lists certain intangible personal property which is exempt from taxation. Among the items considered to be intangible personal property and which are exempt from taxation are franchises. § 199.185(1)(b), Fla. Stat. (1993). Ross, the Deputy Property Appraiser who actually performed the assessments, testified that he included the value of Scripps Howard's franchise in his assessment of Scripps Howard's tangible personal property "because it is a part of the cost of the tangible personal property."
Havill argues that franchises are "intangible intangibles," which are influences on value, like goodwill and location. The franchise enhances the value of the cable system and it is the assembled system which is being valued, not the franchise itself, Havill contends. We disagree. There is a difference between location, such as a condominium with an ocean view, and intangibles such as goodwill and franchise rights. View directly relates to and defines the real property, while goodwill and franchise rights relate to the property only in their connection with the business using the property. See Shubat v. Sutter County Assessment Appeals Board, 13 Cal. App.4th 794, 17 Cal. Rptr.2d 1, 7 (1993) (holding that franchise rights, customer lists, and the right to do business are intangible assets that have value apart from the possessory interests and are exempt from property taxation).
Havill's reasoning was rejected by the Oregon Tax Court. In Jones Intercable, Inc. v. Department of Revenue, 12 OTR 436, 443-44, 1993 WL 129217 (1993), the court wrote:
Defendant also asserts that the effects from the legal rights to operate a CATV system may be included in the assessed value of the system. When boiled down to its essence, defendant's argument merely claims that a franchise adds value to a CATV property and should be included in its assessed value. In making this argument, defendant ignores the court's ruling in Boise Cascade Corp. v. Dept. of Rev., 12 OTR 263 [1991 WL 434542] (1992). That ruling gave the example of a yellow car which is tangible property and valued as such. Id. at 269. If an owner obtains a franchise to operate the car as a taxi, that franchise does not add value to the yellow car. The franchise is a right to operate a business, not the right to use a yellow car.
Plaintiffs do not need a franchise to turn their systems on and process television signals. However, they do need a franchise to install their cable on public property. The franchise does not add value to the installed equipment because the right to install equipment on public property is separate from the equipment itself. Reverting to the example of the yellow car, granting a taxi company a valuable easement over private land does not increase the value of the yellow car used as a taxi. The easement determines where the yellow car may be used, but it does not affect its value as a car.
Oregon statutes tax only tangible property. While ORS 307.010 includes all rights appertaining to the land, franchise rights do not fall in that category. Franchise rights are the right to conduct a business. They are not tied to any particular equipment or property. If property is destroyed or removed, the franchise rights continue in *1075 existence and are transferrable, separate and apart from any other property.
Many fast-food restaurants and other businesses utilize franchises in connection with their real and personal property. Nevertheless, these businesses are taxed only on the value of their real and personal property; the influence of effect of the franchise is not included in the assessed value.
As one writer has succinctly noted:
"The property tax should be limited to property value.
"* * * * *
"* * * A tax upon tangible property requires a valuation of rights in that property, rather than a valuation of business or franchise rights in connection with which such property is used." Youngman, The Role of Valuation in Determining Ownership for Tax Purposes, 43 Tax Lawyer 65, 80-81 (1989).
The ownership of property carries certain rights and responsibilities. Those rights control the relationship between the property and all persons. The owner has the right to possession, control and use of the property, including the right to income or benefits from the use of the property. The owner has the right to exclude others from possession, use or control of the property. Within limits, the owner has the right to change, modify, improve, add to or subtract from the property. An owner may sell, transfer or encumber the property. These property rights, which are subject to taxation, must not be confused with rights which may be closely associated with the use of property but do not arise from the ownership or use of property. The right to install cable television equipment in city streets is granted in the abstract and without regard to any particular property. The property used by the franchisee to operate the CATV system could be owned by the franchisee, leased or borrowed. The franchisee could abandon one system, buy the system of a competitor and operate it using the same franchise. To the extent that the rights and responsibilities created by the franchise, pole attachment agreements, subscriber lists or programming agreements are property, they are intangible property and are not subject to taxation. Consequently, any value associated with those intangibles is not subject to taxation.
We find the court's reasoning persuasive. The Florida Legislature exempted franchises from personal property taxation. The approach Havill advocates would indirectly accomplish what the Legislature prohibited. Section 199.185 clearly exempts franchises from taxation. Because the evidence shows the appraiser did not lawfully reach the appraisal value, the presumption of correctness has been rebutted.

FAILURE TO FOLLOW THE STATUTORY DEFINITION OF TANGIBLE PERSONAL PROPERTY
Paragraph 192.001(11)(d) defines tangible personal property:
"Tangible personal property" means all goods, chattels, and other articles of value (but does not include the vehicular items enumerated in s.1(b), Art. VII of the State Constitution and elsewhere defined) capable of manual possession and whose chief value is intrinsic to the article itself.
Scripps Howard argues the appraiser did not follow the statutory definition of tangible personal property when determining how to assess its property. It points to Deputy Appraiser Ross's testimony that his assessment included a value for assembled work force, management skills and expertise, customer base, service rates, going concern, marketing and programming contracts, and franchises. Ross testified that he considers the statutory definition of tangible personal property a "guideline." His understanding of the provision "capable of manual possession" was that it meant "the right to be bought or sold." He disagreed that it referred to something that could be held or placed somewhere. Ross also stated that the tangible personal property does not necessarily have to have its chief value intrinsic to the article itself.
Scripps Howard asserts, and we agree, that it is clear from Ross's testimony that Ross ignored the statutory definition of tangible personal property and improperly *1076 included the value of certain intangible items in the assessment. Ross's method, the unit method, taxed Scripps Howard upon the income which the entire business generated through its tangible and intangible assets contrary to law. Valuing a cable company as a system necessarily includes taxing otherwise exempt intangibles, just as occurred here. The appraisal of the entire going concern considers the profitability of the business, which is dependent upon a number of intangibles, such as the existence of the franchise, the fact that the company is a natural monopoly, and the skills of its management. Unless and until the Florida Legislature changes section 199.185 to permit the taxation of franchises and other intangibles, Havill's approach is unsustainable.

FAILURE TO CONSIDER EACH OF THE STATUTORY FACTORS REQUIRED FOR JUST VALUATION
Section 193.011, Florida Statutes (1991), "Factors to consider in deriving just valuation," provides:
In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and cost of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation or local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise authorized by applicable law. The applicable governmental body or agency or the Governor shall notify the property appraiser in writing of any executive order, ordinance, regulation, resolution, or proclamation it adopts imposing any such limitation, regulation, or moratorium;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.
Ross admitted that he never inspected Scripps Howard's equipment, that he was unaware of how much the tangible property cost, and that he did not consider the income from that property or its condition. Ross testified he believed the equipment was in good repair because the system worked. Scripps Howard urges that all this is conclusive evidence that the appraiser failed to consider four of the statutory factors  quantity, cost, condition, and income. Accordingly, the appraiser departed from the requirements of the statute and his figures are not to be presumed correct.
Havill answers that Scripps Howard failed to supply the necessary information on its 1990 and 1991 tax returns and should suffer the consequences of its failure. He further contends that Ross did in fact consider each of the eight statutory criteria, pointing to Ross's testimony that when the cost, market, and income approaches to value are all considered, as they were, all eight statutory criteria are used.
*1077 Ross's conclusory statements that the eight criteria are considered automatically in the three approaches is not credible given his admission that he had no idea of the condition, size, location, or income produced by the tangible personal property. It is impossible to conclude that Ross could have properly used the three different approaches when he did not have all the information needed. While the particular method by which an appraiser arrives at fair market value is left to the appraiser's discretion, Valencia Center, Inc. v. Bystrom, 543 So.2d 214, 216 (Fla. 1989), the appraiser must at least consider, but not necessarily use, each of the statutory factors. § 193.011, Fla. Stat. (1993). Here, Ross admittedly did not do so. Consequently, Ross's figures are not entitled to a presumption of correctness.

USE OF THE UNIT METHOD TO APPRAISE A CABLE TELEVISION COMPANY
Havill's office used the income/unit-rule approach to value Scripps Howard's business. Chapter 12D-2.001(a) of the Florida Administrative Code defines this method:
Unit-Rule Method of Valuation  an appraising method used to value an entire operating property, considered as a whole with minimal consideration being given to the aggregation of the values of separate parts. The rights, franchises and property essential to the continued business and purpose of the entire property being treated as one thing having but one value and use.
The issue boils down to whether the cable television system's taxable value is the total of the cost to replace each component, Scripps Howard's approach, or whether the system's value is something greater than the sum of its parts, Havill's contention. Havill argues that the value of a car is not equal to the value of its parts and likewise the market value of the cable system, in light of its naturally occurring monopolistic position,[2] is greater than the cost of its components. Even Scripps Howard's witness, Fred Bliss, agreed that a prospective buyer of a cable system would look at the income generated by it in deciding whether to buy. The Department of Revenue agrees. It cites Adams Express Co. v. Ohio State Auditor, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683 (1897), reh'g denied, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965 (1897) wherein the court approved unit rule assessment of horse and wagon companies. The Court noted:
As to railroad, telegraph and sleeping-car companies, engaged in interstate commerce, it is often been held by this court that their property, in the several states through which their lines or business extended, might be valued as a unit for the purposes of taxation, taking into consideration the uses to which it was put, and all the elements making up aggregate value, and that a proportion of the whole, fairly and properly ascertained, might be taxed by the particular state, without violating any federal restriction... . The valuation was, thus, not confined to the wires, poles, and instruments of the telegraph company, or the roadbed, ties, rails, and spikes of the railroad company ..., but included the proportionate part of the value resulting from the combination of the means by which the business was carried on,  a value existing to an appreciable extent throughout the entire domain of operation.
165 U.S. at 220, 17 S.Ct. at 309 (citations omitted).
Neither Havill nor the Department of Revenue acknowledge that the income/unit-rule method of valuation illegally included intangible values. The Department of Revenue cites Florida East Coast Railway Co. v. Department of Revenue, 620 So.2d 1051 (Fla. 1st DCA 1993), review denied, 629 So.2d 132 (Fla. 1993) wherein the court approved the income/unit-rule method of evaluation used by the Department in assessing a railroad and rejected the railroad's argument that the method was improper because it determined the value of the entire railroad as a going concern:
FEC contends, among other things, that DOR's valuation resulted in double assessment of certain of its intangible personal *1078 property, which is subject to separate assessment under Chapter 199, Florida Statutes; and that its exempt intangible property is being assessed and taxed, since the "going concern" valuation includes intangibles such as franchises, goodwill and other rights, contrary to the two (2) mills limitation of Article VII Section 2, Florida Constitution, and that it exceeds the 1.5 mill rate imposed on all other taxpayers under Section 199.32 Florida Statutes.
As to the "double taxation" argument, the record does not support this claim. Neither does the record support FEC's contentions with regard to the assessment of exempt intangible property, since there is no evidence of a separate valuation of exempt intangibles, the only reference to such intangibles being in the testimony of the expert witnesses for DOR and FEC to the effect that their valuations of the railroad as a "going concern" included the value of all real and personal property used in operation of the railroad viewed as an entity, with such franchises and agreements as were essential to its operation.

Id. at 1055.
The problem with this approach, at least in this case, is that the evidence shows that the value of nontaxable or exempt intangibles was considered in the appraisal. While Havill's arguments in support of his approach are logical and reasonable, as the income approach was applied in this case the method violated the prohibition against taxation of certain intangibles. In fact, the application of the income/unit rule method to cable television runs directly contrary to the State of Florida, Department of Revenue's Manual of Instructions, Standard Measures of Value Pertaining to the Assessment of Tangible Personal Property and Inventory:
The income approach to value is generally considered to be the least reliable means of determining the value of tangible personal property, and should be utilized with extreme caution. The income approach lends itself to items of personal property which are normally or usually leased or rented by the owner to others. This approach is also appropriate for consideration in the case of those properties where the income is regulated by state and/or Federal Regulatory Agencies. In such case, annual earning[s] may be capitalized to provide an indication of just value. The capitalization of earnings generated by a business through the use of tangible personal property such as equipment, machinery, etc., is not recommended as an accurate approach to value in that the earnings are based not only upon the intrinsic value of the personal property used but also depend upon labor skills, management techniques, etc., which are intangible factors unrelated to the value of the personal property.
Although paragraph 193.085(4)(a), Florida Statutes (1991), permits this method of evaluation to be used to assess railroads and the Second District approved its use in assessing an electric cooperative in Lowe v. Lee County Electric Cooperative, Inc., 367 So.2d 1114 (Fla. 2d DCA 1979), we find that cable television companies are unlike railroad companies or utility companies.[3] They do not hold exclusive franchises and are not regulated in the same manner. Cable television companies are naturally occurring monopolies. These distinctions lead us to conclude that the extension of section 193.085(4)(a) to cable companies is improper. Under the evidence presented, we hold that it was error to apply the income/unit rule approach to value Scripps Howard.

CORRECTION OF AN ERRONEOUS RETURN AFTER CERTIFICATION OF THE TAX ROLLS
In 1990, Deputy Appraiser Ross reassessed Scripps Howard's tangible property for the 1989 tax year. He did so based upon his belief that Scripps Howard filed an erroneous return. He testified:
Q. Mr. Ross, you back-assessed Lake County Cablevision for the tax year of 1989?

*1079 A. We went back and we made a new determination of value for the first time, or made a valuation of Scripps Howard for 1989 that would have created a back-assessment situation, yes.
Q. It wasn't a correction of an old assessment, it was a reassessment?
A. What it was was a, basically a first-time assessment or assessment of Scripps Howard's operating property.
The trial court found the reassessment was a permissible correction of an erroneous return under section 193.073, which provides:
Upon discovery that an erroneous or incomplete statement of personal property has been filed by a taxpayer or that all the property of a taxpayer has not been returned for taxation, the property appraiser shall proceed as follows:
(1) If the property is personal property and is discovered before April 1, he shall make an assessment in triplicate. After attaching the affidavit and warrant required by law, he shall dispose of the additional assessment roll in the same manner as provided by law.
(2) If the property is personal property and is discovered on or after April 1, or is real property discovered at any time, the property shall be added to the assessment roll then in preparation.
Scripps Howard contends that the reassessment was unauthorized. We agree.
The 1989 tax rolls were certified and Scripps Howard had paid its 1989 intangible personal property tax before the reassessment occurred. The reassessment of property which has once been returned and certified on the tax roll and paid is unauthorized and void. United Telephone Co. of Fla. v. Colding, 408 So.2d 594, 595 (Fla. 2d DCA 1981) (holding the assessor could not revalue already assessed property to correct his earlier assessed value based mistakenly on the wrong figures; section 193.073 does not allow correction of erroneous returns "after the tax rolls have been certified and the taxes paid."), review denied, 419 So.2d 1196 (Fla. 1982).
Havill contends his action was correct under subsection 197.122(1) which provides for the correction of any act or omission of the property appraiser. While this statute did not go into effect until June 7, 1991, the language of the statute was transferred verbatim from section 197.142 by Chapter 91-295, Laws of Florida (1991). This statute thus supported his assessment, Havill contends. Contrary to Havill's position, however, section 197.142 has been held to permit correction of clerical errors, but not reassessment after the tax rolls have been certified and the tax paid "even if the appraiser mistakenly, inadvertently, or negligently assessed the property." Countryside Country Club, Inc. v. Smith, 573 So.2d 14, 16 (Fla. 2d DCA 1990), review denied, 583 So.2d 1034 (Fla. 1991). Simply because the assessor decides that a new method is better than an old does not permit him to "reopen" an assessment.

CONCLUSION
In light of the evidence that Ross improperly failed to consider certain statutory factors and wrongfully included the value of the franchise in his assessment, the presumption of correctness to be afforded the appraisal has been overcome. Accordingly, this court is placed in the position of being able to review the assessment and determine the appropriateness of the method used. We hold that it was error to apply the income/unit method of appraisal to Scripps Howard for the reasons expressed herein.
We certify the following question as one of great public importance:
IS THE INCOME/UNIT RULE METHOD OF APPRAISAL AN APPROPRIATE METHOD OF ASSESSING THE TANGIBLE PERSONAL PROPERTY OF TELEVISION CABLE COMPANIES?
REVERSED.
COBB and HARRIS, JJ., concur.
NOTES
[1] Scripps Howard hired Kane Reece to perform an independent appraisal.
[2] The cable company's right to do business is not an exclusive governmental franchise such as is granted to a utility company. Its monopoly or exclusivity arises from economic conditions.
[3] Cable television businesses have been determined not to be public utilities in the State of Florida. Teleprompter Corp. v. Hawkins, 384 So.2d 648 (Fla. 1980); Devon-Aire Villas Homeowners Assoc. v. Americable Assoc., 490 So.2d 60 (Fla. 3d DCA 1985).