778 So.2d 346 (2000)
WAL-MART STORES, INC., Appellant,
v.
Alvin MAZOUREK, etc., Appellee.
Nos. 5D99-3165, 5D99-3168.
District Court of Appeal of Florida, Fifth District.
December 29, 2000.
Rehearing Denied February 28, 2001.
*348 Stacy D. Blank, Robert E.V. Kelley, Jr., and Joseph J. Weissman of Holland & Knight, LLP, Tampa, for Appellant.
Joseph C. Mellichamp, III, Gaylord A. Wood, Jr., and B. Jordan Stuart of Wood & Stuart, P.A., New Smyrna Beach, for Appellee.
John C. Dent, Jr., and Sherri L. Johnson of Dent & Cook, P.A., Amicus Curiae for Jim Todara.
PLEUS, J.
This case involves the issue of whether the Property Appraiser of Hernando County used correct methods to value tangible personal property owned and used by Wal-Mart in the operation of two retail stores and a distribution center. Wal-Mart challenged the 1997 appraisal in the court below.
The Appraiser's assessments of value in this case are based on what he termed a "mass appraisal, cost approach." In other words, he used Wal-Mart's original or historical cost paid for the property, including sales taxes. These amounts were adjusted for inflation and depreciation with the use of a computer program which contains depreciation percentages and economic life guidelines. The end result is the replacement cost new as of January 1, 1997. No other appraisals, calculations, or analyses were made to the computer-generated values except for a correlation check with other unidentified tax returns. The Property Appraiser admitted at trial that he never sought out, or considered, any market data in the determination of value. He did not consider any information from dealers of similar property, nor did he make any adjustments for additional depreciation or obsolescence. All witnesses admitted there is no market in three-month old trade fixtures.
At the conclusion of the trial, the trial court entered a lengthy final judgment in favor of the Property Appraiser. In its ruling, the court found that "sales tax, shipping, installation and the like are proper costs which must be included in a properly conducted cost approach." In addition, the trial court ruled that the Property Appraiser need not rely exclusively on the used equipment dealer's market in assessing the property. It further found that the Appraiser properly rejected the use of data from the salvage market and was correct in using as a correlation check the amounts subsequently reported by other unidentified taxpayers as part of the purchase price of an entire business which included tangible personal property. The court concluded that the Property Appraiser properly considered all of the factors in section 193.011, Florida Statutes (1997).
During discovery done in connection with Wal-Mart's challenge, and nearly a year into this litigation, the Appraiser filed a counterclaim alleging that Wal-Mart had failed to report, among other things, such items as unlicensed vehicles (yard trucks), the raised floor in the computer room, certain expensed property, walk-in coolers, computer software, forklift and cart batteries, *349 a conveyer walkway system, hundreds of thousands of pallets, and sprinkler back-up pumps and generators. A specific list of the unidentified and allegedly unreported items was never furnished to Wal-Mart. After a final hearing, the trial court's final judgment, prepared by counsel for the Property Appraiser, listed additional unreported categories of property which were not mentioned in the counter-claim. Wal-Mart then was ordered to cooperate with the Property Appraiser and furnish sufficient information so the Appraiser could assess the remaining unreported property.
The Florida Constitution, Article VII, Section 4 (1968) provides that all property must be assessed at "just value" for ad valorem taxation. Under section 193.011 and Florida case law, eight statutory factors must be considered to arrive at a just valuation.[1] In Straughn v. Tuck, 354 So.2d 368 (Fla.1977), our Supreme Court held that property appraisers must consider each factor enumerated in the statute in arriving at just value, though the property appraiser may assign to each factor such weight as appropriate. An appraiser's assessment must carefully consider each of the eight criteria, in good faith, and give each criteria "such weight as the facts justify." Daniel v. Canterbury Towers, Inc., 462 So.2d 497, 502 (Fla. 2d DCA 1984).
If the appraiser fails to properly consider each of the statutory criteria, his assessment loses the presumption of correctness it normally enjoys. See Havill v. Lake Port Properties, Inc., 729 So.2d 467 (Fla. 5th DCA 1999). The taxpayer is then entitled to have the assessment set aside upon a showing, by a mere preponderance of the evidence, that the assessments exceed the fair market value of the property. An incorrect application of a factor in the assessment process amounts to a failure to consider it.
A property appraiser can fulfill the requirement to consider a factor only if he or she has the information necessary to *350 do so. See Scripps Howard Cable Co. v. Havill, 665 So.2d 1071 (Fla. 5th DCA 1995). Mere awareness of data does not rise to the level of required consideration. See Schultz v. TM Florida-Ohio Realty Ltd. Partnership, 577 So.2d 573 (Fla.1991).
As this court noted in Lake Port Properties, Inc., reliance on one of the three traditional approaches to value, or any combination thereof, cost, income or market approach, depends on the type of property being assessed. It is not for the court to determine which method or combination of methods normally is superior so long as the valuation takes into consideration the eight statutory factors. Id., at 470; Scripps Howard, 665 So.2d at 1076-1077; Schultz, 577 So.2d at 575.
In cases in which the appraiser considers a factor but rejects it, consideration and the reasons why it was rejected should be stated so a court can evaluate whether rejection was legally proper.

The Sales Tax Issue
Wal-Mart contends that the Property Appraiser's inclusion of some 2 million dollars of sales taxes paid by it on its property in the assessment valuation was violative of section 193.011(1) and (8). It argues that sales tax, a cost of sale and purchase, should not be considered in establishing just value because sales tax itself is not subject to taxation for ad valorem purposes.
To bolster its argument, Wal-Mart points out that the Department of Revenue's 1997 Manual of Instructions for its Assessment of Tangible Personal Property and Inventory guidelines instructs property appraisers to exclude sales tax from the assessed value of property. The Property Appraiser tried to side step the instructions with the assertion that the DOR's manual is "flawed" and "out-dated."
Sales tax is a tax levied on each taxable transaction for those exercising the taxable privilege of engaging in the business of selling tangible personal property at retail. § 212.05(1), Fla.Stat. (1997). Section 212.02(16), Florida Statutes (1997) defines "sales price," in part, as the "total amount paid for tangible personal property...." The fact that taxpayers are required to include on the return form and report to the property appraiser the purchase price of their property, including sales tax, transportation, handling, and installation charges, if incurred, does not mean that these items are part of the sales price. The sales price of an item is that cost levied by the vendor, whereas sales tax is that cost levied by the state. The two are distinct and should not be added together in the assessment of tangible personal property.
External costs of sale are uniformly excluded from "just value" because they add nothing to the actual value of property. See Hausman v. VTSI, Inc., 482 So.2d 428, 431 (Fla. 5th DCA 1985), rev. denied, 492 So.2d 1332 (Fla.1986). The Fourth District discussed what "costs" in a real property context should be deducted as "costs of sale" under section 193.011(8) and concluded: "Such usual and reasonable fees and costs typically include reasonable attorney's fees, broker's commissions, documentary stamp taxes, appraisal fees and title insurance costs. Internal expenditures such as marketing costs are generally not included...." Spanish River Resort Corp. v. Walker, 497 So.2d 1299, 1304 (Fla. 4th DCA 1986), approved, 526 So.2d 677 (Fla.1988). See Turner v. Tokai Financial Services, Inc., 767 So.2d 494 (Fla. 2d DCA 2000). Sales taxes are no different from documentary stamp taxes paid on real estate exchanges.
It is clear that sales taxes are external costs and not internal. Interestingly, the property appraiser in Turner admitted that in determining fair market value, sales taxes should be deducted from the sales price.
We therefore hold that any sales tax paid in connection with the sale of the property to Wal-Mart must be excluded *351 from consideration in establishing just value. This error deprives the assessment of its presumption of correctness.

The Market Data Issue
Wal-Mart next contends that the Appraiser should have considered the Market Data Approach[2] for valuing tangible personal property. It again relies on the DOR's guidelines which state that "[i]f reliable and comparable data can be analyzed, the market data or comparable sales approach is generally considered the most reliable method of evaluation." Another statement in the guidelines under the Market Data Approach states, "Market data relating to personal property may be difficult to obtain; however, the appraiser must search for this information and when successful in finding valid market values, he must use them in his appraisal." The Property Appraiser admitted at trial that he never sought out or considered any market data in assessing Wal-Mart's property.
The Property Appraiser did testify, however, that he compared the Wal-Mart assessments to certain unidentified taxpayer's returns which reported the purchase of entire businesses. His opinion was that these comparisons validated his assessments and demonstrated that he considered "market data."
Wal-Mart argues that the Property Appraiser's use of other taxpayer returns is not market data within the meaning of section 193.011(1) and (8) for two reasons. First, it notes that the sale of an existing business often includes certain intangibles such as goodwill and franchise rights which are difficult to value. Second, it correctly points out that it is difficult to assign a true market value to individual assets sold as part of an entire business. We agree that the Property Appraiser's use of other taxpayer returns in the manner described does not demonstrate that market data values were considered.
On the other hand, we disagree with Wal-Mart that the Property Appraiser must use the Market Data approach rather than the cost approach in assessing its property. We simply hold that both must be considered, and if the Market Data approach is rejected, a plausible explanation must be given for its rejection. In Lake Port Properties, Inc., this court recently said:
... It is not for the trial court to consider which method used in appraisals is superior, so long as the property appraiser's valuation took into consideration statutory factors. The application of appraisal principles to any given property requires an exercise of judgment. Therefore, a greater reliance on one may result in a different valuation. It is for this very reason that the property appraiser is given "great leeway" as long as he follows the requirements of the law.
[citations omitted]. Id., 729 So.2d at 471.
Section 193.011 requires "only that the property appraiser consider the listed factors not that he necessarily apply them." Turner, 767 So.2d at 497. The Property Appraiser's admitted failure to investigate the availability of market data indicates he failed to properly consider the factors set forth in section 193.011(1) and (8).
To emphasize our point, property appraisers typically value property using one of three well-recognized methods: market approach, cost approach, or income approach. We concede that in this case the income approach may not apply because the property in question is not rented and is not capable of generating any income stream. However, this does not excuse the Appraiser from investigating to determine whether it does apply, and then explaining to the court why the income approach was rejected. In like fashion, the *352 Appraiser should explain to the court the steps taken to investigate market data; why market data is not available; or if it is available, why he did not consider it. It is then within the province of the trial judge to weigh the evidence.

The Counterclaim Issue
Wal-Mart contends that the trial court erred by giving the Property Appraiser free reign to assess its unreturned property through its counterclaim rather than using the proper statutory procedure. We agree.
The Property Appraiser's assessment of unreturned property is governed by section 193.073(1)(b), Florida Statutes (1997). That statute provides as follows:
193.073 Erroneous returns; estimate of assessment when no return filed.
* * *
(1) Upon discovery that an erroneous or incomplete statement of personal property has been filed by a taxpayer or that all the property of a taxpayer has not been returned for taxation, the property appraiser shall proceed as follows:
* * *
(b) If the property is personal property and is discovered on or after April 1, or is real property discovered at any time, the property shall be added to the assessment roll then in preparation.
See also § 193.092, Fla.Stat. (1997) [concerning the assessment of back property taxes]. Because the Property Appraiser failed to exhaust his administrative remedies, his counterclaim to confirm the assessment of the unreturned property was not warranted. Unreported property must be assessed in accordance with the administrative procedures set forth in the statutes and administrative rules, not via a counterclaim in circuit court.
The Florida Administrative Code[3] mandates a two-step procedure for correcting allegedly erroneous or incomplete returns. First, the property owner must be notified of the increase in the assessed value. This notice must state that the property owner has the right to appeal to the value adjustment board relative to the correction. No such notice has been given to Wal-Mart.
Second, the Value Adjustment Board must approve the new assessment and provide the taxpayer with a hearing to challenge the assessment. If the Board has adjourned, the correction cannot be made until the following year. Wal-Mart has received no hearing before the Value Adjustment Board.
Accordingly, the trial court's judgment in favor of the Appraiser on his counterclaim is reversed. Unless and until the Property Appraiser exhausts his administrative remedies, as provided for in section 193.073(1)(b), he is precluded from pursuing additional assessments or retroactively taxing any property through a counterclaim.[4]
We remand the cause for a new trial on the appropriate amount of the assessments consistent with this opinion.
REMANDED.
PETERSON and SAWAYA, JJ., concur.
NOTES
[1] Section 193.011, Florida Statutes (1997) provides:

193.011 Factors to consider in deriving just valuation.In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length.
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation, local or state land use regulation, or historic preservation ordinance, and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise authorized by applicable law. The applicable governmental body or agency or the Governor shall notify the property appraiser in writing of any executive order, ordinance, regulation, resolution, or proclamation it adopts imposing any such limitation, regulation, or moratorium;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.
[Emphasis added].
[2] The Market Data Approach has no precise definition in the record, but we understand it to be akin to the comparative sales approach as commonly understood.
[3] Fla.Admin.Code R. 12D-8.021(9).
[4] We likewise question whether some of the items described in the counterclaim are, in fact, tangible personal property, but we reach no conclusion because that issue is not presently before us.