831 So.2d 85 (2002)
Alvin MAZOUREK, etc., et al., Petitioners,
v.
WAL-MART STORES, INC., Respondent.
No. SC01-663.
Supreme Court of Florida.
June 13, 2002.
Rehearing Denied September 12 and November 21, 2002.
*86 Mark Aliff, Assistant Attorney General, Tallahassee, FL; and Gaylord A. Wood, Jr., and B. Jordan Stuart of Wood & Stuart, P.A., New Smyrna Beach, FL, for Petitioners.
Stacy D. Blank and Robert E.V. Kelley, Jr. of Holland & Knight LLP, Tampa, FL, for Respondent.
Roy C. Young, General Counsel, Young, van Assenderp, Varnadoe & Anderson, P.A., Tallahassee, FL; and Victoria L. Weber and Rex D. Ware, Special Counsel, of Hopping, Green & Sams, P.A., Tallahassee, FL, for the Florida Chamber of Commerce, Amicus Curiae.
J. Ben Harrill of Figurski & Harrill, Holiday, FL, for Mike Wells as Pasco County Property Appraiser, Amicus Curiae.
John C. Dent, Jr., and Sherri L. Johnson of Dent & Cook, Sarasota, FL, for James Todora, as Property Appraiser of Sarasota County; Ed Crapo, as Property Appraiser of Alachua County; Timothy "Pete" Smith, as Property Appraiser of Okaloosa County; and Ervin Higgs, as Property Appraiser of Monroe County, Amici Curiae.
WELLS, C.J.
We have for review Wal-Mart Stores, Inc. v. Mazourek, 778 So.2d 346 (Fla. 5th DCA 2000), which expressly and directly conflicts with the decision in Wal-Mart Stores, Inc. v. Todora, 791 So.2d 29 (Fla. 2d DCA 2001), notice invoking discretionary review filed, No. SC01-1130 (Fla. May 18, 2001), and which affects a class of state or constitutional officers. We have jurisdiction, see art. V, § 3(b)(3), Fla. Const., quash the Fifth District's decision in Mazourek, and approve the Second District's opinion in Todora.

PROCEDURAL HISTORY
Wal-Mart Stores, Inc. (Wal-Mart) operates two retail stores in Hernando County. Wal-Mart store 1213 is commonly referred to as a "superstore," and it opened in the fall of 1996. Wal-Mart store 967 is a conventional store. Within Hernando *87 County, Wal-Mart also operates a distribution center. Alvin Mazourek is the Hernando County Property Appraiser who assessed the value of Wal-Mart's real and tangible property existing as of January 1, 1997, the lien date, for ad valorem taxation purposes.
Wal-Mart instituted two suits against Mazourek, Leona Bechtelheimer, as Hernando County Tax Collector, and Larry Fuchs, as the Executive Director of the Florida Department of Revenue. The suits, which were consolidated, contended that Mazourek's assessments of Wal-Mart's tangible personal property within the two stores and the distribution center exceeded just valuation. Wal-Mart made a similar claim that Mazourek's assessment of certain real property and improvements thereon were incorrect. Mazourek counterclaimed and alleged that Wal-Mart failed to disclose for assessment multiple items of tangible personal property. Prior to trial, the real property issue was settled.
In a nonjury trial conducted before Circuit Judge John W. Springstead, Wal-Mart attempted to demonstrate that Mazourek failed to properly consider the factors listed in section 193.011, Florida Statutes (1997), and that Mazourek's assessments exceeded just valuation. For instance, Wal-Mart alleged that the fair market value of store shelving and the Rapistan conveyer system used in the distribution center were much lower than the assessed amount. The tangible personal property supervisor in Mazourek's office used a mass appraisal cost approach to determine the assessment amount. The supervisor testified that he did not deduct sales tax paid by Wal-Mart on the assessed property when he determined the assessments.
The trial court concluded that Mazourek properly considered all factors enumerated in section 193.011 and that the mass appraisal cost approach method was appropriate in this case. The court further found that the "evidence clearly shows that sales tax, shipping, installation and the like are proper costs which must be included in a properly conducted cost approach." Wal-Mart Stores, Inc. v. Mazourek, Nos. 97-2994-CA & 97-3121-CA, order at 6 (Fla. 5th Cir. Ct. order filed Oct. 15, 1999). The trial court entered judgment in Mazourek's favor and ratified Mazourek's assessments of tangible personal property located at the distribution center and both stores. On the counterclaim issue, the trial court found that Wal-Mart failed to return items of tangible personal property for assessment at its distribution center and at the superstore. Consequently, the court ordered Wal-Mart to cooperate with Mazourek by listing all items of property not previously disclosed by Wal-Mart. Accordingly, judgment was entered in Mazourek's favor on the counterclaim issue.
The Fifth District Court of Appeal reversed both judgments, see Mazourek, 778 So.2d at 351-52, and held that sales tax paid by Wal-Mart on the items of tangible personal property must be excluded from consideration in establishing just value and that Mazourek's assessments lost their presumption of correctness because Mazourek failed to properly consider the section 193.011 factors. See id. at 350-51. As to the counterclaim issue, the district court concluded that Mazourek failed to exhaust his administrative remedies, and *88 therefore the judgment in Mazourek's favor could not stand. See id. at 352.
Mazourek and the Department of Revenue sought review in this Court, asserting conflict between the Fifth and Second District Courts of Appeal in respect to the issue concerning the property appraisers' inclusion of sales tax in an appraisal conducted pursuant to the cost approach. Mazourek's position is supported by numerous amicus filings by other Florida property appraisers, the property appraiser's association, the Association of Counties, Inc., and the Association of County Attorneys, Inc. An amicus brief in favor of Wal-Mart was filed by the Florida Chamber of Commerce, Inc.

ANALYSIS
The first issue we address is whether sales tax paid by a taxpayer on tangible personal property may properly be considered in a cost approach valuation of such personalty. We conclude that there is no impediment in Florida law prohibiting property appraisers from including sales tax in the original cost of such personalty where a property appraiser determines the ad valorem assessment for that personalty using the cost approach pursuant to generally accepted appraisal methods.
An ad valorem tax is a tax assessed upon the value of property. See Collier County v. State, 733 So.2d 1012, 1014 n. 2 (Fla.1999) (citing § 192.001(1), Fla. Stat. (1997)); Smith v. American Airlines, Inc., 606 So.2d 618, 620 n. 2 (Fla.1992) (quoting Black's Law Dictionary 51 (6th ed.1990)). The Legislature has defined tangible personal property as "all goods, chattels, and other articles of value ... capable of manual possession and whose chief value is intrinsic to the article itself." § 192.001(11)(d), Fla. Stat. (1997).
Article VII, section 4, Florida Constitution, provides in pertinent part: "By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation...." The phrase "just valuation" has been construed to mean "fair market value." See Valencia Center, Inc. v. Bystrom, 543 So.2d 214, 216 (Fla.1989) (citing Walter v. Schuler, 176 So.2d 81, 85-86 (Fla.1965) ("fair market value" legally synonymous with "just valuation")). The Legislature has enacted eight factors which a property appraiser must consider to assist the property appraiser in determining just valuation. See § 193.011(1)-(8), Fla. Stat. (1997). That statute provides in relevant part:
In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation, local or state land use regulation, or historic preservation ordinance, and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor ...;

*89 (3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property;
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing ....
§ 193.011, Fla. Stat. (1997). The property appraiser's assessment is presumed correct, but such presumption is lost where the taxpayer demonstrates by a preponderance of the evidence that the property appraiser "has failed to consider properly" the section 193.011 factors. See § 194.301, Fla. Stat. (1997); see also Havill v. Scripps Howard Cable Co., 742 So.2d 210, 212 (Fla.1998) ("If the property appraiser does not consider each of these statutory factors, the presumption of validity of the assessment is lost.") (citing Straughn v. Tuck, 354 So.2d 368, 371 (Fla.1978)). The obligation upon the property appraiser is for the property appraiser to "consider," but not necessarily apply, each factor. See Havill, 742 So.2d at 212. "The property appraiser's determination of assessment value [is] an exercise of administrative discretion within the officer's field of expertise." Blake, 447 So.2d at 1350. There are "three well-recognized approaches to determining the value of tangible personal property," Havill, 742 So.2d at 212, of which the cost approach is one. We previously have described the cost approach to valuation:
The "cost approach" considers the cost that a prudent purchaser would pay to acquire an equally desirable substitute on the open market. The cost approach simply values the original, reproduction or replacement cost of the property, less an allowance for depreciation. In the absence of comparable sales data, the Manual of Instructions [for Property Tax Administration ] recommends the use of the cost approach by county appraisers to determine the just value of tangible personal property.
Id. at 213 (emphasis added).
The Manual of Instructions provided to county property appraisers by the Florida Department of Revenue and in effect on the lien date in this case described the cost approach:
The first step in the cost approach is to obtain the original cost of the item and then determine the validity of the cost. If the item was purchased new in an open competitive market, then this approach becomes similar to the Market or Comparable sales approach. The most reliable source of cost data is the financial records of the property owner.
Id. at 5-6 (emphasis added). In obtaining the original cost for assessment purposes counsel for Mazourek and Wal-Mart acknowledged at oral argument that property appraisers in Florida for many years have consistently included sales tax as a part of the original cost paid by the taxpayer *90 when utilizing the cost approach. The record contains no information that consideration of sales tax paid in an assessment derived from the cost approach is a recently developed practice of Mazourek, and counsel conceded that although sales tax has in the past been included as a component of the assessment, no objection has been previously raised to this inclusion.
The inclusion of sales tax in the cost approach is supported by appraisal texts. For instance:
The cost approach can be applied to almost all types of personal property. Its application is especially well suited to the valuation of machinery and equipment, for which it is possible to identify make and model (model number) of the item, year acquired, and total acquisition costs including freight, installation, taxes, and fees.

International Ass'n of Assessing Officers, Property Assessment Valuation 360 (2d ed.1996) (emphasis added). When using the cost approach to value a fixed asset,[1] "the appraiser must verify whether costs of fixed assets reflect all expenses necessary to convert purchase price or acquisition cost to incorporate the cost of the asset brought to highest and best use." Id. at 369 (emphasis added). Similarly, another text advises:
The first step in the cost approach is to determine the proper level of current cost, cost of reproduction, which is the cost of producing or constructing a property in like kind or the cost of replacement, which is the cost of producing or constructing a property of equivalent utility. The normal cost elementcluded in either the replacement or reproduction cost estimates are all direct and indirect costs.

Machinery and Equipment Textbook Committee of the American Society of Appraisers, Appraising Machinery and Equipment 82 (John Alico ed., 1989) (emphasis added).
The Fifth District Court of Appeal concluded in this case that sales tax paid by a taxpayer is an external cost of a sale that adds no value to the purchased item. See Mazourek, 778 So.2d at 350. The district court then held that Mazourek's assessment of Wal-Mart's tangible personal property lost its presumption of correctness because of the inclusion of sales tax. In contrast, the Second District in Todora, a case presenting Wal-Mart's challenge to the 1997 ad valorem tax assessment to its tangible personal property located in Sarasota County, concluded that the property appraiser could properly consider sales tax paid when using the cost approach. See Todora, 791 So.2d at 31. We approve the Second District Court of Appeal's opinion as follows:
In arriving at just valuation, the property appraiser must consider the eight factors set forth in section 193.011, Florida Statutes (1997). Although the property appraiser must consider all of the factors, he may discard entirely any that are not probative of fair market value *91 under the circumstances. See Turner v. Tokai Fin. Servs., Inc., 767 So.2d 494 (Fla. 2d DCA 2000). The method of valuation and the weight to be given each factor is left to the appraiser's discretion, and the decision will not be disturbed on review as long as each factor has been lawfully considered and the assessed value is within the range of reasonable appraisals. See Valencia Ctr., Inc. v. Bystrom, 543 So.2d 214 (Fla.1989). Because there are so many well-recognized approaches for arriving at an appraisal, the appraiser's decision may be overturned only if there is no reasonable hypothesis to support it. See Daniel v. Canterbury Towers, Inc., 462 So.2d 497 (Fla. 2d DCA 1984).
In [the Sarasota] case, the property appraiser used the cost approach method of valuation. The cost approach requires an appraiser to adjust the original acquisition cost of the property to current market replacement cost. That figure is then adjusted for depreciation. We find no error in the selection of this method, particularly in light of Wal-Mart's statement in its petition to the Sarasota County Value Adjustment Board that the cost approach was the most feasible and appropriate method of valuation for the subject property.
. . . .
Acquisition costs, the starting point for assessments of property under a cost approach, are generally recognized to include freight, installation, taxes, and fees. See Int'l Ass'n of Assessing Officers, Property Assessment Valuation 360 (2d ed.1996). As Judge Doughtie of the Eighth Judicial Circuit recently noted in a comprehensive analysis of the issue,
it is obvious that in determining how long to keep a fixture in use (which is what depreciation is really all about) the owner must consider all of the business costs involved in acquiring and installing the fixture. Part of the owner's decision to replace an item has be [sic] based on the total investment (including sales tax) he has in the item. This reasoning is supported by all of the authoritative appraisal texts recognized by the experts.

Wal-Mart Stores, Inc. v. Crapo, No. 97-CA-4728 (Fla. 8th Cir.Ct. Feb. 26, 2001).[[2]] We agree with this reasoning.
Id. at 30-31.
In a cost approach, inclusion of sales tax within the amount of the original cost is consistent with generally accepted appraisal practices. We find no basis upon which to hold that this appraisal practice is contrary to law or returns an assessment that exceeds just valuation.[3] Thus, we conclude *92 that the Fifth District Court of Appeal erred in finding that Mazourek's assessment of Wal-Mart's personalty lost its presumption of correctness on account of Mazourek's inclusion of sales tax paid.
We next consider whether Mazourek properly considered the section 193.011 factors. See § 194.301, Fla.Stat. (1997). On the basis of this record, we find that competent, substantial evidence supported the trial court's finding that Mazourek properly considered the section 193.011 factors. Morever, we find no error with the trial court's ratification of Mazourek's assessment of Wal-Mart's tangible personal property. See § 194.301, Fla. Stat.(1997)(where property appraiser properly considers the section 193.011 factors, "the taxpayer shall have the burden of proving by clear and convincing evidence that the appraiser's assessment is in excess of just value"). Accordingly, we conclude that the Fifth District Court of Appeal erred in reversing the assessments, and we quash the decision in Mazourek.[4]

CONCLUSION
We quash the decision of the Fifth District Court of Appeal in this matter and approve the Second District Court of Appeal's opinion in Todora. We remand with instructions that Mazourek's assessments of Wal-Mart's tangible personal property be affirmed.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] "Fixed assets are tangible property in a relatively permanent location." Id. at 347.
[2] The Crapo case presented Wal-Mart's challenge to the 1997 ad valorem tax assessment to its tangible personal property located in Alachua County. The Crapo case currently is pending before the First District Court of Appeal. See Wal-Mart Stores, Inc. v. Crapo, No. 1D01-1203 (Fla. 1st DCA notice of appeal filed Mar. 29, 2001).
[3] Our decision today finds support in case law from other jurisdictions. See Xerox Corp. v. County of Orange, 66 Cal.App.3d 746, 136 Cal.Rptr. 583, 591 (1977) ("The addition of taxes and freight charges to the list price ... is consistent with an appraisal approach that gives consideration to the consumer's cost in arriving at market value."); see also State Dep't of Assessments & Taxation v. Metrovision of Prince George's County, Inc., 92 Md. App.194, 607 A.2d 110, 119 (Spec.App.1992) ("[C]ertain intangible expenses of tangible personal property may be included in the assessment of that property when using the cost method for valuation of personal property."); Lionel Trains, Inc. v. Chesterfield Township, 224 Mich.App. 350, 568 N.W.2d 685, 687 (1997) (deferring to Michigan Tax Tribunal's determination "that freight, sales tax, and installation could be appropriately included in the true cash value of personal property"); but see Board of County Comm'rs of Leavenworth County v. McGraw Fertilizer Serv., Inc., 261 Kan. 901, 933 P.2d 698, 712 (1997) (sales tax cannot be included under Kansas constitutional provision requiring assessment at "retail cost when new").
[4] Because we quash the Fifth District Court of Appeal's decision in Mazourek, we do not need to address issues involving the purported new duties imposed upon property appraisers by the district court's opinion. With regard to Mazourek's counterclaim presented to the trial court, the district court reversed the trial court's judgment in favor of Mazourek on the counterclaim because Mazourek failed to exhaust his administrative remedies. Mazourek, 778 So.2d at 352. Neither party raised the counterclaim issue before this Court, and therefore we do not address the district court's decision on the counterclaim issue.