742 So.2d 210 (1998)
Ed HAVILL, etc., et al., Petitioners,
v.
SCRIPPS HOWARD CABLE COMPANY, etc., Respondent.
Department of Revenue, Petitioner,
v.
Scripps Howard Cable Company, etc., Respondent.
Nos. 87,357, 87,381.
Supreme Court of Florida.
April 23, 1998.
Rehearing and Clarification Denied June 10, 1999.
Gaylord A. Wood, Jr. of the Law Offices of Wood & Stuart, P.A., DeLand, and Robert Butterworth, Attorney General, and Joseph C. Mellichamp III, Senior Assistant Attorney General, Tallahassee, for Petitioners.
*211 Denis L. Durkin, Jerry R. Linscott, and Lea Ann Banks of Baker & Hostetler, Orlando, for Respondent.
Robert K. Robinson and John C. Dent of Dent & Cook, P.A., Sarasota, for John W. Mikos, Property Appraiser of Sarasota County.
John P. Harllee, III of Harllee, Porges, Hamlin & Hamrick, P.A., Bradenton, and Charles F. Dudley, General Counsel, Tallahassee, for Florida Cable Telecommunications Association, Inc., Amicus Curiae.
John R. Hargrove of Heinrich, Gordon, Hargrove, Weihe & James, P.A., Fort Lauderdale, Robert G. Beatty of BellSouth Telecommunications, Inc., Miami, James W. McBride and Anne M. Stolee of Baker, Donelson, Bearman & Caldwell, Washington, DC, and Richard W. Bell of BellSouth Corporation, Atlanta, GA, for BellSouth Telecommunications, Inc., Amicus Curiae.
HARDING, Justice.
We have for review Scripps Howard Cable Co. v. Havill, 665 So.2d 1071 (Fla. 5th DCA 1995), which certified the following question to be of great public importance:
IS THE INCOME/UNIT RULE METHOD OF APPRAISAL AN APPROPRIATE METHOD OF ASSESSING THE TANGIBLE PERSONAL PROPERTY OF TELEVISION CABLE COMPANIES?
Scripps Howard, 665 So.2d at 1079. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and approve the decision of the Fifth District Court of appeal.

Facts
Scripps Howard Cable Company d/b/a Lake County Cablevision (Scripps Howard), owns a cable television business in Leesburg, Florida, which serves customers in Lake, Marion, and Volusia Counties. Scripps Howard employs the use of an extensive network of tangible personal property in providing their customers with cable television services. Scripps Howard purchases programming services from a variety of providers, including local television stations and satellite-relayed channels. These programming services are delivered by Scripps Howard to its customers via a cable television system. Scripps Howard uses various antennae and satellite dishes to receive the broadcast signals from television stations and satellites. These signals are sent to processing centers known as "headends," then delivered to distribution points through large trunk cables. Distribution cables transport the signals from the major distribution points to the neighborhoods. Amplifiers are placed along the cables to maintain the clarity of the signal during transportation. House drops carry the signal from the distribution cable to the customer's residence or place of business. The house drops are connected by taps to the distribution cables. In addition to the equipment of the physical plant, Scripps Howard also owns associated business equipment, such as trucks and inventory.
Scripps Howard challenged in the Lake County Circuit Court the ad valorem tax assessment of its tangible personal property by Ed Havill, the Lake County Property Appraiser, for the years 1989 through 1992. The assessment for the year 1989 was a reassessment performed in mid-1990. Havill's assessments, performed by Deputy Property Appraiser Robert Ross, were based on the "income/unit-rule method of valuation." Havill has assessed the six other cable television companies located in Lake County by using the cost method of valuation. Scripps Howard and Kane Reece, an independent appraisal firm hired by Scripps Howard, each appraised Scripps Howard's tangible personal property through the use of the cost method. The following table shows the valuations of Scripps Howard's tangible personal property as determined by the separate appraisals by Havill, Scripps Howard, and Kane Reece:

*212
Year Havill
1989 $14,999,454
1990 $17,190,856
1991 $19,170,796
1992 $21,590,700
Year Scripps
1989 $ 8,603,400
1990 $ 8,819,700
1991 $ 8,614,169
1992 $ 9,600,284
Year Kane Reece
1989 $10,100,837
1990 $ 9,015,630
1991 $ 8,622,564
1992 $ 8,582,560

Following the trial on this dispute, the circuit court ratified Havill's assessments. Scripps Howard appealed the final judgment and the Fifth District Court of Appeal reversed. The district court held that Havill's assessments were not entitled to the presumption of validity usually afforded such assessments because Havill failed to consider each factor under section 193.011, Florida Statutes (1993), for deriving the just value of the property. The district court also held that Havill's assessments improperly included the value of intangible items and exempt property, and that Havill lacked the authority to perform the reassessment for the 1989 tax year. The district court then certified the aforementioned question as one of great public importance. This review proceeding ensued.

Principles of Ad Valorem Taxation
Article VII, section 9, of the Florida Constitution provides that counties, municipalities, and school districts shall be authorized by law to levy ad valorem taxes on real property and tangible personal property. The Florida Legislature has authorized the levy of ad valorem taxes by these local government entities. See, e.g., §§ 125.016 (counties), 166.211 (municipalities), 236.25 (local school boards), Fla. Stat. (1997). The Florida Constitution prohibits local government entities from levying ad valorem taxes on intangible personal property. The power to tax intangible personal property is available only to the state. Art. VII, §§ 1(a), 2, 9(a), Fla. Const.
The Florida Constitution also requires a just valuation of all property for ad valorem taxation. Art. VII, § 4, Fla. Const. The property appraiser's determination of just value is an exercise of administrative discretion within the field of his or her expertise. Blake v. Xerox Corp., 447 So.2d 1348 (Fla.1984). A presumption of validity attaches to the property appraiser's assessment of property for ad valorem taxation purposes. Bystrom v. Whitman, 488 So.2d 520, 521 (Fla. 1986). Property appraisers are required under section 193.011 to take the following factors into consideration in determining just valuation: (1) the present cash value of the property; (2) the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property; (3) the location of the property; (4) the quantity or size of the property; (5) the cost of the property and the replacement value of improvements on the property; (6) the condition of the property; (7) the income from the property; and (8) the net proceeds from the sale of the property. If the property appraiser does not consider each of these statutory factors, the presumption of validity of the assessment is lost. Straughn v. Tuck, 354 So.2d 368, 371 (Fla. 1978).

The Income Method of Valuation
The certified question asks whether it is appropriate for a property appraiser to use a combination of the income method of valuation and the unit-rule method of valuation in assessing the tangible personal property of cable television companies. The income method of valuation is one of three well-recognized approaches to determining the value of tangible personal property. The "market approach" or "comparable sales approach" analyzes the recent sales of similar property to arrive at the probable market price of the property being appraised. Prior to using this approach, *213 the appraiser must determine if there is an active market for the property from which reliable sales data can be obtained. The Florida Department of Revenue's Manual of Instructions for Property Tax Administration, (hereinafter Manual of Instructions) includes a section entitled "Standard Measures of Value Pertaining to the Assessment of Tangible Personal Property and Inventory." This document states that when reliable and comparable data is available, the market approach to value is considered the most accurate method of valuation. However, the market approach is not typically used to value the tangible personal property of cable television systems due to the lack of reliable comparable sales data.
The "cost approach" considers the cost that a prudent purchaser would pay to acquire an equally desirable substitute on the open market. The cost approach simply values the original, reproduction or replacement cost of the property, less an allowance for depreciation. In the absence of comparable sales data, the Manual of Instructions recommends the use of the cost approach by county appraisers to determine the just value of tangible personal property.
The "income approach" requires the property appraiser to estimate the future income that a prospective purchaser could expect to receive from the business enterprise. The business enterprise consists of all the assets of the business tangible personal property, real property, and intangible assets. After estimating the future income, the property appraiser discounts the amount to present value by applying a capitalization rate. After completing the income approach, the appraiser has one value for the entire property. From this single value, the appraiser must attempt to deduct the values of real property, intangible assets, and other nontaxable items, to ensure that the income is solely attributable to the tangible personal property of the business enterprise.
Ross used the income method to value Scripps Howard's tangible personal property. Ross determined the value of Scripps Howard's business enterprise by estimating the future net operating income and then applying a fourteen percent capitalization rate to the income value. Ross testified that he arrived at the capitalization rate by "look[ing] at the ... regulated utilities to find out what kind of a cap rate they were using as well as looking at T Bills, number of different items and felt a fourteen percent cap rate was fair and just." Ross deducted twenty percent of the capitalized value in an attempt to eliminate values attributable to real property, intangible personal property, or otherwise nontaxable items. However, Ross conceded that the deduction was not intended to eliminate values attributable to intangible items such as goodwill, workforce in place, and managerial skills. Furthermore, Ross could not provide a basis for the twenty percent allocation.
As demonstrated by Ross's appraisal of Scripps Howard's property, the valuation of a cable television company's tangible personal property by the income approach is constitutionally infirm. From the single value arrived at by the income approach, it is virtually impossible to segregate specific items and identify their values. Thus, it is unlikely that the value of intangible assets and other nontaxable items can be subtracted in a nonarbitrary fashion to reveal the just valuation of the tangible personal property. For example, Ross testified that he intended the twenty percent deduction from the capitalized value of Scripps Howard's business enterprise to eliminate values attributable to intangible assets, real property, and other nontaxable items. However, as Ross had no means of determining the values of the items not subject to taxation, the twenty percent allocation was without basis and we find it to be wholly arbitrary.
An additional weakness of the income approach relates to the projections and assumptions that the appraiser is required *214 to make. As noted in one text, "Certainly the projections of expected future income require the use of a crystal ball, and the development of the appropriate rates of [capitalization] is subjective...." American Society of Appraisers, Appraising Machinery and Equipment 125 (John Alico, ed.1989). Obviously, the assumptions and projections made by the appraiser can have a major impact on the final determination of value. The potential for error in determining the just valuation of tangible personal property pursuant to the income approach is so great that the Manual of Instructions strongly discourages the use of the approach.
The income approach to value is generally considered to be the least reliable means of determining the value of tangible personal property, and should be utilized with extreme caution. The income approach lends itself to items of personal property which are normally or usually leased or rented by the owner to others. This approach is also appropriate for consideration in the case of those properties where the income is regulated by state and/or Federal Regulatory Agencies. In such case annual earning may be capitalized to provide an indication of just value. The capitalization of earnings generated by a business through the use of tangible personal property such as equipment, machinery, etc., is not recommended as an accurate approach to value in that the earnings are based not only upon the intrinsic value of the personal property used but also depend upon labor skills, management techniques, etc., which are intangible factors unrelated to the value of the personal property.
. . . .
When reliable market or cost data is not available for like properties, greater emphasis falls on the capitalization of net income method of appraisal. This approach is not recommended unless the income stream is clearly defined and attributable to the personal property under appraisal, as in the case of leased equipment.
Manual of Instructions at 3, 5. We hold as a matter of law that insofar as the income method of valuation taxes intangible property, it is an unconstitutional method for use with cable television companies.

The Unit-Rule Method of Valuation
The Florida Legislature has authorized the Florida Department of Revenue to assess the tangible personal property of railroad and railroad terminal companies under the unit-rule method of valuation. § 193.085(4)(a), Fla. Stat. (1997). The "unit-rule method of valuation" is defined under Chapter 12D-2.001(8), Florida Administrative Code, as follows:
An appraising method used to value an entire operating property, considered as a whole with minimal consideration being given to the aggregation of the values of separate parts. The rights, franchises, and property essential to the continued business and purpose of the entire property being treated as one thing having but one value in use.
As indicated in the regulatory definition, the unit-rule method includes intangible property values in the unit value of the operating property. As previously discussed, local government units are without constitutional authority to levy assessments on intangible personal property. Therefore, we hold as a matter of law that insofar as the unit method of valuation taxes intangible property, it is an unconstitutional method for use with cable television companies.

The 1989 Reassessment
Scripps Howard also challenged Havill's authority to reassess its tangible personal property for the 1989 tax year. The reassessment was based on the appraiser's belief that Scripps Howard filed a false and fraudulent return for that year. Havill maintained at trial, and again before this Court, that the reassessment was a valid correction of an erroneous tax return under section 193.073. The trial court *215 adopted Havill's reasoning and upheld the reassessment. The district court determined that the trial court's ruling was clearly erroneous and held that Havill lacked the authority to reassess the property because the 1989 tax rolls had been certified, and Scripps Howard had paid its 1989 tangible personal property tax before the reassessment occurred. United Tel. Co. v. Colding, 408 So.2d 594, 595 (Fla. 2d DCA 1981)("We do not construe section 193.073 to allow correction of erroneous returns after the tax rolls have been certified and the taxes paid."). We agree with the reasoning of the district court below and hold that Havill lacked the authority to reassess Scripps Howard's tangible personal property for the year 1989.

Conclusion
Insofar as the income/unit-rule method of appraisal taxes intangible property, it is an unconstitutional method for use with cable television companies. The power to tax intangible personal property is exclusively reserved to the State under the Florida Constitution. We approve the decision of the district court and remand this case for proceedings consistent with this opinion.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.