COVINGTON, Judge.
This is an appeal by the Sarasota County Property Appraiser from a final judgment which found that the Property Appraiser’s assessment exceeded just value. Venice Golf and Country Club # 1, Inc., the plaintiff in the trial court, cross-appealed and challenged the dismissal of its request for a nominal assessment. Because we find that the record lacks competent, substantial evidence of the property’s value, we reversé and remand the matter and direct the trial court to order the Property Appraiser to reassess the property. However, we affirm without comment the trial court’s finding that the valuation rendered by the Property Appraiser was excessive. See § 193.011, Fla. Stat. (1999).
In order to challenge the Property Appraiser’s assessment of its property for the years 1999 and 2000, Venice Golf filed suit pursuant to section 194.171, Florida Statutes (1999). Venice Golf is a Florida not-for-profit corporation that owns and operates a private golf, tennis, swimming, and social club. The property in question consists of three parcels. The largest parcel includes a golf course, clubhouse, tennis courts, pro shop, pool house, and fitness center, as well as various car houses, start *408 er houses, pump houses, and restroom facilities. This parcel was assessed at $8,384,897 in 1999 and $8,407,000 in 2000. The second parcel, which consists of a maintenance facility located adjacent to the golf course, was assessed at $149,474 in 1999 and $229,300 in 2000. The third parcel, which contains a lake, was assessed at $2220 in 1999 and $2200 in 2000. Thus, when the assessments of the three parcels are added together, the assessments amounted to $8,536,591 in 1999 and $8,638,500 in 2000.
In 1999, Ron Ondrias prepared the Property Appraiser’s assessment. In assessing the property, Mr. Ondrias considered all three traditionally accepted approaches to value: income, comparable sales, and cost. Although he considered the cost approach, he based his final assessment on both the income and comparable sales approaches. He used the cost approach to support the values indicated by the other two approaches.
While attempting to calculate a value using the income approach, Mr. Ondrias sent Venice Golf a request for information regarding its actual income and expenses. Venice Golf did not respond, nor did it provide Mr. Ondrias with any information regarding the actual income and expenses of the property. However, Mr. Ondrias did receive financial data from other golf courses in Sarasota. Therefore, he was able to calculate an income approach value based on the income and expenses that are typical of other golf courses in Sarasota County.
In 2000, Jim Ashburn calculated the Property Appraiser’s assessment. Mr. Ashburn also sent Venice Golf a request for information regarding its actual income and expenses. Likewise, Mr. Ashburn did not receive a response. As a result, he was forced to calculate a value based on the income approach, without having any information regarding the actual operating expenses. For the year 2000, the calculation was especially difficult because other golf courses had failed to supply him with income information. Mr. Ashburn also attempted to perform a market approach for 2000. However, because of the lack of any recent sales of golf course properties, he did not rely on the market approach in his final calculation.
Ultimately, Mr. Ashburn used a combination of the cost and market approaches for 2000. In calculating the value of the raw land for the cost approach, Mr. Ash-burn reviewed comparable land sales. The comparable land sales indicated a value of $18,300 per acre. Mr. Ashburn then added the golf course improvements to determine the value of the property.
To challenge the Property Appraiser’s assessment, Venice Golf presented the testimony of Richard Bass. Mr. Bass is employed as a real estate appraiser, planner, and economist. Using the cost approach, Mr. Bass arrived at a value of $4,588,000. The sales comparison approach indicated a value of $4,680,000. Using these figures, Mr. Bass arrived at a final value in 1999 of $4,400,000. He concluded that the cost value per acre of raw land should be $2500. Mr. Bass used this same approach in 2000. He used the same figures and methods to arrive at a final value of $4,307,000 for 2000.
In determining the just value of property, a property appraiser must consider the eight factors outlined in section 193.011, Florida Statutes (1999).[1] There is *409 a strong presumption of validity given to the property appraiser’s assessment of property. Bystrom v. Whitman, 488 So.2d 520, 521 (Fla.1986). However, “[i]f, the property appraiser does not consider each of these statutory factors, the presumption of validity of the assessment is lost.” Havill v. Scripps Howard Cable Co., 742 So.2d 210, 212 (Fla.1998) (citing Straughn v. Tuck, 354 So.2d 368, 371 (Fla.1978)).
Although the trial court found that the Property Appraiser had properly considered each of the factors in section 193.011, it concluded that Venice Golf had established that the assessment did not reflect the just value of the property. Therefore, the trial court ordered the Property Appraiser’s assessment for both 1999 and 2000 reduced to $6,154,300. The trial court’s order did not state whether the reduced assessment would cover all three parcels in dispute or just the one large parcel. The trial court explained that it calculated the reduced assessment by applying the cost approach to valuation. However, rather than using the Property Appraiser’s improved land value of $18,300 per acre or Venice Golfs proposed raw land value of $2500 per acre, the trial court used a value of $10,000 per acre.[2] The trial court then added $3,150,000 for the improvements to the golf course and $733,900 for the clubhouse. However, the trial court specifically excluded any value attributable to the parking lot, pump house, and other such improvements.
The trial court may not use its independent judgment, absent the introduction of competent evidence, to determine the valuation of property. Merrill v. Simpson, 220 So.2d 33, 34 (Fla. 1st DCA 1969). It is not the function of the court to take the place of the property appraiser. Id. Thus, since the record lacked compe *410 tent, substantial evidence of value, which could have been provided by Venice Golf, the trial court should have remanded the matter to the Property Appraiser to reassess the property. See also R-C-B-S Corp. v. Walter, 225 So.2d 426, 428 (Fla. 1st DCA1969).
In its cross-appeal, Venice Golf challenges the trial court’s denial of its request for a nominal assessment. Again, because the record lacks competent, substantial evidence of value, the trial court should have remanded the matter to the Property Appraiser for reassessment.
We therefore reverse and remand for further proceedings consistent with this opinion.
NORTHCUTT and STRINGER, JJ„ concur.

. Section 193.011 states as follows:
In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
*409 (1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm’s length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation, local or state land use regulation, or historic preservation ordinance, and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise authorized by applicable law. The applicable governmental body or agency or the Governor shall notify the property appraiser in writing of any executive order, ordinance, regulation, resolution, or proclamation it adopts imposing any such limitation, regulation, or moratorium;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.

. The Property Appraiser introduced evidence that the cost of raw, undeveloped land was between $10,000 and $12,000 per acre in 1999 and between $10,000 and $24,000 in 2000.