854 So.2d 731 (2003)
GTE FLORIDA, INC., Appellant,
v.
Jim TODORA, as Property Appraiser of Sarasota County; Barbara Ford-Coates, as Tax Collector of Sarasota County; and Jim Zingale, as Executive Director of the Florida Department of Revenue, Appellees.
No. 2D01-1035.
District Court of Appeal of Florida, Second District.
August 22, 2003.
*732 Stacy D. Blank and Robert E.V. Kelley, Jr. of Holland & Knight, LLP, Tampa, for Appellant.
Sherri L. Johnson and John C. Dent, Jr., of Dent & Cook, Sarasota, for Appellees.
NORTHCUTT, Judge.
The circuit court rejected the claim by GTE Florida, Inc. that the Sarasota County Property Appraiser had improperly valued its tangible personal property in that county for ad valorem tax purposes by, among other things, including the value of nontaxable intangible property. We conclude that the appraisal did improperly include the value of intangible property.
The proceedings below produced an extensive record, which we have studied carefully. In sum, it reflects that GTE owns tangible personal property in Sarasota County consisting mostly of telephone access lines it uses to provide telephone service. For ad valorem tax purposes, in 1997 the property appraiser valued this tangible personal property at $250 million. In 1998 he valued it at $271 million. GTE's expert witness testified below that these assets were worth $192.5 million in 1997 and just over $213 million in 1998. After a four-day nonjury trial, the circuit court upheld the property appraiser's valuations.
GTE challenges the ruling on three general grounds. It argues, first, that the property appraiser's valuation method improperly included the value of intangible assets, which are not taxable by local governments. GTE also contends that in two respects the property appraiser failed to properly consider the valuation criteria set forth in section 193.011, Florida Statutes (1997), as required by that statute. Finally, GTE complains that the circuit court erred in permitting the introduction of evidence regarding GTE's sales of access lines in other parts of the country.
The first issue centers on the property appraiser's use of the income method of valuation, which he employed with minor variations in both years. The property *733 appraiser's approach was to determine a total value for the entire GTE business enterprise, then to allocate a portion of the total to Sarasota County. When valuing the GTE enterprise, the property appraiser employed two methods, the income approach and the cost approach. Under the former, the property appraiser found the value of the company by dividing its income by a capitalization rate. From this he deducted several items of property he concluded were either nontaxable or separately assessed and taxed, such as motor vehicles, licensed trailers, and computer software. He did not adjust for any other intangibles. Under the cost approach, the property appraiser took the original cost incurred by GTE to acquire its tangible personal properties, then depreciated it based on the properties' economic lives. After calculating values under the two methods, the property appraiser weighted them to establish a final value. In 1997, he weighted his income valuation at sixty percent and his cost valuation at forty percent. In 1998, he weighted the two approaches equally.
After determining an overall value of GTE's tangible personal property, the property appraiser allocated a portion of the value to Sarasota County using two allocation methods. First, he determined the ratio of GTE's access lines located in Sarasota County to its total number of access lines. He also calculated the ratio of the original cost of GTE's property located in Sarasota County to the original cost of GTE's total property. The property appraiser then used the average of these two figures to allocate a portion of the value of GTE's total tangible personal property to Sarasota County.
This method was consistent with that employed by the property appraiser when valuing GTE's tangible personal property in previous years. But GTE contends that legislation enacted in 1996 had the effect of rendering the property appraiser's use of the income approach improper. Under prior law, telephone companies were subject to "rate-based regulation," that is, they were permitted to earn a prescribed rate of return on their investments in facilities and equipment. Because rate-based regulation tied a telephone company's income directly to the value of its tangible assets, the property appraiser could use the income approach to value the company's tangible personal property without improperly including intangible assets in the assessment.
In 1996 Congress enacted the Telecommunications Act of 1996, see 47 U.S.C. §§ 251-615b, and Florida enacted companion legislation, see ch. 95-403, Laws of Fla. These laws substantially deregulated the telephone industry and provided for competition. The new scheme also abandoned rate-based regulation in favor of price cap regulation, under which telephone companies may not charge consumers prices in excess of a specified cap. So long as telephone companies do not exceed the price cap, their incomes are unregulated.
GTE maintains that, because its income after 1996 was and is subject to competitive forces, the income approach to valuing its tangible personal property necessarily incorporates the value of intangible assets that affect the income, such as goodwill, workforce in place, and managerial skills. Under the Florida Constitution, only the State may levy ad valorem taxes on intangible personal property. Art. VII, §§ 1(a), 2, 9(a), Fla. Const. Therefore, GTE argues, the Sarasota County Property Appraiser's valuation based on the income approach was unconstitutional. We agree.
In Havill v. Scripps Howard Cable Co., 742 So.2d 210 (Fla.1998), the supreme court addressed this issue as it related to tangible personal property owned by a cable *734 television company. In that case the property appraiser had valued Scripps Howard's tangible personal property using the income approach, from which he deducted twenty percent in an attempt to eliminate values attributable to real property, intangible personal property, or other nontaxable assets. However, the property appraiser conceded that the deduction was not directed specifically to such intangible assets as goodwill, workforce in place, or managerial skills, and he could not provide a basis for the twenty percent allocation. The supreme court observed that the appraisal demonstrated that "the valuation of a cable television company's tangible personal property by the income approach is constitutionally infirm."
From the single value arrived at by the income approach, it is virtually impossible to segregate specific items and identify their values. Thus, it is unlikely that the value of intangible assets and other nontaxable items can be subtracted in a nonarbitrary fashion to reveal the just valuation of the tangible personal property.
Id. at 213.
The court went on to quote the Florida Department of Revenue's Manual of Instructions for Property Tax Administration, which stated that the income approach to valuation lends itself to personal property that is leased by the owner to others, such that the income stream is directly identified with the property itself, and to situations in which the property owner's income is regulated by state or federal agencies. Otherwise, however,
[t]he capitalization of earnings generated by a business through the use of tangible personal property such as equipment, machinery, etc., is not recommended as an accurate approach to value in that the earnings are based not only upon the intrinsic value of the personal property used but also depend upon labor skills, management techniques, etc., which are intangible factors unrelated to the value of the personal property.
Scripps Howard, 742 So.2d at 214 (quoting Manual of Instructions for Property Tax Administration at 3). The supreme court concluded: "We hold as a matter of law that insofar as the income method of valuation taxes intangible property, it is an unconstitutional method for use with cable television companies." Id.
The property appraiser maintains that the Scripps Howard case does not control here. He parses the above-quoted holding in two ways. First, he points out that the supreme court held that the income valuation method is unconstitutional "for use with cable television companies." But he offers no reason why the principles underlying that holding do not apply equally as well to a similarly situated taxpayer such as GTE, and we can fathom none.
Second, the property appraiser emphasizes that the supreme court held the income valuation method unconstitutional only "insofar as [it] taxes intangible property." From this premise he argues that, as the taxpayer contesting the valuation, GTE was obliged to prove the extent to which the valuation improperly included intangible property. The circuit court, too, held this view, and it found that GTE had failed to meet its burden.
We reject this application of the supreme court's holding. As the court acknowledged by virtue of its quotation from the Manual of Instructions, there are limited circumstances in which the income method can be employed without the risk that it will include the value of nontaxable intangible property. But the court recognized that, outside those circumstances, the inclusion of intangible value is inherent in the income method, that it is "virtually *735 impossible" to segregate and quantify the values of the intangibles in order to subtract them, and that for those reasons the use of the income method for the ad valorem taxation of tangible personal property is unconstitutional. The court made no mention of any evidence offered by the taxpayer to prove how much intangible value had been included in the valuation.
The assessment of a tax that is not authorized by law is void. Lewis State Bank v. Bridges, 115 Fla. 784, 156 So. 144 (1934). Under Scripps Howard, it is the fact that an income-based valuation includes nontaxable intangible personal property, not proof of the value of the intangibles, that renders the property appraisal invalid.
Finally on this point, the property appraiser argues that even if his valuation method was improper, it did not result in an excessive valuation of GTE's property. He contends this was demonstrated by the prices GTE received in various sales of access lines in other parts of the country. These sales were not employed in the property appraiser's valuation, but were discovered during the litigation. See Bystrom v. Equitable Life Assurance Soc'y of the United States, 416 So.2d 1133, 1138 (Fla. 3d DCA 1982) (observing that a property appraiser may defend his assessment with information acquired afterward). The circuit court allowed the property appraiser to introduce evidence of these sales over GTE's relevancy objection.
The evidentiary dispute aside, the "comparable sales" evidence simply did not demonstrate that the property appraiser's valuation did not exceed just value. His position in this regard was based on the fact that his valuations amounted to $1050.39 per access line in 1997 and $1060.96 per access line in 1998, whereas in various transactions around the country GTE sold access lines for $1060 to $3064 per line from 1993 to 1996, and for $2460 to $3947 per line in 1999 and 2000. Acknowledging GTE's contention that these numbers were meaningless without evidence of net sales prices after deducting intangible values, the property appraiser proposes to attribute thirty percent of the sales prices to intangibles. This yields a price range for the comparable sales of $742 to $2763.
There are two problems with the property appraiser's argument. First, the "comparable" sales varied widely in price. If the Sarasota County access lines were most like the most expensive of those sold by GTE, the property appraiser substantially undervalued them even after reducing the sales price by thirty percent to account for intangibles. On the other hand, if the Sarasota County access lines were most comparable to the least expensive of those sold by GTE, and again assuming that thirty percent of the sales price was attributable to intangibles, the property appraiser overvalued GTE's access lines by over forty-one percent. Testimony at trial made the obvious point that a variety of factors could affect the sales prices of access lines. But, except in the broadest of terms, the record contains scant information from which a fact finder could discern what factors caused the differential in the specific cases introduced at trial, or how those factors may or may not apply to GTE's access lines in Sarasota County. In other words, the so-called comparable sales manifestly were not strictly comparable with each other, and a fact finder could only speculate as to which of them were most indicative of the worth of GTE's Sarasota County access lines.
The second flaw in the property appraiser's argument is the premise that thirty percent of the prices realized in all the comparable sales were attributable to intangibles. He derived this figure from an *736 appraisal GTE commissioned relative to the sales of several groups of access lines. The evidence reflected that GTE had employed this figure in some other sales for which it had not obtained appraisals. But the evidence also showed that in many other sales the parties had allocated far different portions of the prices to intangibles, often far exceeding thirty percent. Again, the evidence did not furnish the fact finder any basis for concluding that a thirty percent intangible factor should be applied to all the comparable sales for purposes of comparing them to GTE's Sarasota County access lines.
Section 194.301, Florida Statutes (1999), provides that if in a judicial proceeding the property appraiser's assessment "is determined to be erroneous," the court can establish the assessment if the record contains competent, substantial evidence that cumulatively meets the valuation criteria set forth in section 193.011.[1] Otherwise, the court must remand the matter to the property appraiser with appropriate directions. Here, we have determined that the property appraiser's valuation method improperly included nontaxable intangible assets in the valuation of GTE's Sarasota County tangible property, and we have carefully examined and rejected the property appraiser's assertion that, nevertheless, his evidence of GTE's sales of access lines in other instances supported his determination of just value. Therefore, we conclude that the circuit court should have determined that the assessment was erroneous and proceeded to either establish the assessment based on the record or remand the matter to the property appraiser. We reverse and remand for that purpose.
With that in mind, we consider GTE's assertion that the property appraiser failed to properly consider the criteria set forth in section 193.011. Under section 194.301, the property appraiser's assessment must be accorded a presumption of correctness unless the taxpayer proves by a preponderance of the evidence that the property appraiser did not consider properly the criteria in section 193.011. If the presumption is defeated, the taxpayer's burden is to prove by a preponderance of the evidence that the assessment exceeds just value. If the presumption is not defeated, the taxpayer's burden of proof on that issue is by clear and convincing evidence.
GTE argues that the property appraiser failed to properly consider the statutory valuation criteria on two grounds. The first is that the property appraiser's income-based valuation was flawed because he erroneously used a capitalization rate derived from the interest rate on financing that GTE had in place. GTE contends he should have based the capitalization rate on interest rates in the market. This issue has been rendered moot by our conclusion that the property appraiser should not have employed the income valuation method.
GTE also takes issue with the property appraiser's cost approach to valuation because he failed to deduct sales taxes as a *737 "cost of sale" associated with GTE's acquisition of the tangible personal property. The supreme court has concluded that there is no legal impediment to this approach. Mazourek v. Wal-Mart Stores, Inc., 831 So.2d 85 (Fla.2002).
Finally, because we have determined that the property appraiser's evidence of comparable sales failed to support its valuation of GTE's tangible personal property in Sarasota County, we need not address GTE's evidentiary objection.
Reversed and remanded with instructions.
SILBERMAN and KELLY, JJ., Concur.
NOTES
[1] A property appraiser is required under section 193.011 to consider the following factors when determining just valuation: (1) the present cash value of the property; (2) the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property; (3) the location of the property; (4) the quantity or size of the property; (5) the cost of the property and the replacement value of improvements on the property; (6) the condition of the property; (7) the income from the property; and (8) the net proceeds from the sale of the property. The property appraiser's obligation is to consider, but not necessarily to apply, each of the factors. Scripps Howard, 742 So.2d at 212.