# Supreme Court of Florida

No. SC19-701

**BILL FURST, etc., et al.,**
Petitioners,

vs.

**SUSAN K. DEFRANCES, et al.,**
Respondents.

September 2, 2021

MUÑIZ, J.

This case pits a property appraiser against a taxpayer. The property appraiser undervalued and undertaxed the taxpayer's property, the taxpayer paid her tax bill, and then the property appraiser assessed back taxes after discovering his (purportedly) clerical error. The Second District Court of Appeal invalidated the back-assessment, holding that under these circumstances the property had not "escaped taxation," as required by the governing statute. *DeFrances v. Furst*, 267 So. 3d 525, 526 (Fla. 2d DCA 2019). We agree with the district court and approve its decision.

I.

In 2014, Susan DeFrances received an implausibly low property tax bill for her waterfront property in Sarasota County. The reason is that the taxes were assessed based on a property value nearly $2 million lower than the value for the year before, even though there had been no change to the property. DeFrances timely paid the bill.

The next year the Sarasota County Property Appraiser discovered that errors affecting DeFrances's assessment had occurred during his office's conversion from one computer-assisted mass appraisal system to another. Before the conversion, DeFrances's property had been treated as a single parcel made up of five lots, each with its own value; after the conversion, the new system treated the parcel as made up of a single lot. *Id.* at 527 n.1. The new system also mistakenly applied DeFrances's homestead exemption to the entire parcel, even though the property includes an additional single-family home that DeFrances uses as a rental property. *Id.*

After discovering these valuation errors, the Property Appraiser reassessed DeFrances's property for the 2014 tax year

- 2 -

and sent her a bill for back taxes. From the Property Appraiser's perspective, his authority to assess the back taxes depended on the valuation errors being "clerical errors," as opposed to errors in judgment. For purposes of discussion, we will accept the Property Appraiser's "clerical errors" characterization. But as we explain later, we do not think the distinction is relevant to the disposition of this case, and we do not intend to create precedent for what counts as a "clerical error" in any case where the label matters.

What does matter here is that the Property Appraiser in his briefing concedes that DeFrances's "entire parcel was (technically) assessed." Moreover, the Property Appraiser gave an interrogatory response acknowledging that "[t]here is no specific, defined area of land that escaped taxation since the land was valued as a whole." *Id.* at 528. The Property Appraiser had been asked the question: "Identify the specific portions of the Property that escaped taxation in 2014 (or which would have escaped taxation if the Property had been assessed at $302,400.00 in 2014)."

DeFrances initiated this lawsuit to obtain a judgment declaring the invalidity of the back-assessment of taxes for 2014. She lost in the trial court. But on appeal, the Second District ruled

in DeFrances's favor. The district court concluded that the back taxes were invalid because DeFrances's property had not "escaped taxation," a prerequisite for a Property Appraiser's authority to assess back taxes under section 193.092(1), Florida Statutes (2013), the statute under which the Property Appraiser proceeded here.

We have exercised our discretion to review the district court's decision, which expressly affects property appraisers, a class of constitutional officers. *See* art. V, § 3(b)(3), Fla. Const.

## II.

## A.

"Escaped taxation"—the statutorily undefined phrase that is central to resolving this case—has a long history in Florida law. Before 1899, a property appraiser could assess back taxes if "any land in his county was omitted in the assessment roll of either or all of the three previous years." Ch. 4322, § 24, Laws of Fla. (1895). Then, in 1899, the phrase "escaped taxation" first appeared. Our Legislature amended the omitted property law (which applied only to taxes on real property) to require the property appraiser to back-assess taxes on "any land in his county [that] has, for any reason,

- 4 -

escaped taxation for all or any of the three previous years." Ch. 4663, § 24, Laws of Fla. (1899). In the statute book, the pre- and post-1899 laws appeared under a section heading titled "Assessment of land previously omitted." § 722, Rev. Gen. Stat. Fla. (1920).

The Legislature amended this law again in 1923, retaining the phrase "escaped taxation" but, among other things, broadening the statute to cover property other than land. *See* Ch. 9180, § 1, Laws of Fla. (1923). As to the issues in this case, there have been no material changes to the relevant portion of our state's back-assessment law since 1923. That law—the only law on which the Property Appraiser relies for authority to assess back taxes—is now found in section 193.092(1), Florida Statutes.

Section 193.092(1), Florida Statutes (2015), appears under the title "Assessment of property for back taxes." In pertinent part the statute reads:

> When it shall appear that any ad valorem tax might have been lawfully assessed or collected upon any property in the state, but that such tax was not lawfully assessed or levied, and has not been collected for any year within a period of 3 years next preceding the year in which it is ascertained that such tax has not been assessed, or levied, or collected, then the

officers authorized shall make the assessment of taxes upon such property in addition to the assessment of such property for the current year, and shall assess the same separately for such property as may have *escaped taxation* at and upon the basis of valuation applied to such property for the year or years in which it *escaped taxation*, noting distinctly the year when such property *escaped taxation* and such assessment shall have the same force and effect as it would have had if it had been made in the year in which the property shall have *escaped taxation* . . . .

§ 193.092(1), Fla. Stat. (emphasis added).

The Second District concluded, and we agree, that the resolution of this case turns on the meaning of the phrase "escaped taxation" as applied to the facts here. By the terms of the statutory text, only property that has "escaped taxation" is subject to back-assessment. If that element is not satisfied, then the conditions in the beginning clauses of the statute—including whether the property tax could have been lawfully assessed but was not lawfully assessed—do not come into play.

Under basic principles of statutory interpretation, our task is to discern the text's meaning as it would have been understood by a reasonable reader, fully competent in the language, at the time of its enactment. *See Page v. Deustche Bank Trust Co. Americas*, 308 So. 3d 953, 958 (Fla. 2020). We have not uncovered any evidence

- 6 -

suggesting that the phrase "escaped taxation" had a different meaning in 1923 than it would to an informed reader today (or to an informed reader in the years in between). Nor do we have reason to believe that in 1923 the phrase was a legal term of art with a meaning different from its ordinary meaning. Recognizing that the contextual meaning of a word or phrase will not always be free from doubt, we aim to arrive at the best reading of the text.

Although there are several past decisions of this Court involving section 193.092(1) and its predecessors, none of those cases explicitly sought to discern the ordinary meaning of the phrase "escaped taxation" as used in the statutory text. Therefore we seek guidance in a decision interpreting the same phrase in a closely related statute. Now repealed, section 199.29, Florida Statutes (1941), governed the back-taxation of intangible personal property. The statute required back-assessment when "any intangible personal property has for any reason escaped taxation for any or all of the three previous years." We addressed the meaning of this provision in *Florida National Bank of Jacksonville v. Simpson*, 59 So. 2d 751 (Fla. 1952).

*Simpson* involved a dispute over the taxation of a portion of Alfred I. DuPont's estate. *Id.* The taxpayer in *Simpson* had paid taxes based on property valuations submitted by the taxpayer and accepted by the property appraiser. *Id.* The property appraiser later determined that the valuation did not represent the property's full cash value, and he sought to impose a back-assessment. *Id.* We framed the issue for determination as whether the untaxed value "represents a portion or part of the intangible which will be considered as having 'escaped taxation' and be subject to back assessments within three years." *Id.* at 756. Our Court answered no to that question.

We rejected what we deemed "a strained construction" of the text and instead adopted what we called "the customary, common usage meaning" of the phrase "escaped taxation." *Id.* We explained that "Section 199.29 only authorizes the tax assessor to back-assess intangible personal property which for any reason has 'escaped taxation'—not to raise the valuation of intangible personal property which has been erroneously valued." *Id.* at 756-57. We said that if the Legislature had "intended to grant the power to, and to direct, the tax assessor to *back-assess* because of an inaccurate

original valuation, we have no doubt it would, as it should, have done so clearly and unequivocally in Section 199.29." *Id.* at 757. And we summed up our view of the matter by observing that property "is either taxed or is not taxed. In the latter event only has it 'escaped taxation.'" *Id.* at 758.[1]

The *Simpson* Court's analysis is compelling, and we think that it applies equally to the meaning of the phrase "escaped taxation" in section 193.092(1). There is a commonsense distinction between not being taxed at all and being undertaxed. And a typical speaker would use the phrase "escaped taxation" to describe the former and not the latter. Only property that is not taxed has "escaped taxation."[2]

---

1. In an opinion that we find persuasive, the Attorney General also cited *Simpson* to support the opinion's conclusion that section 193.092 does not authorize back-assessments to correct for the "undervaluation of property." The opinion answered no to the question: "May an assessor of taxes in Florida back-assess properties for years for which there were insufficient valuations of the properties assessed?" *See* Op. Att'y Gen. Fla. 64-139 (1964).

2. By adopting this interpretation, we do not disturb the holding of *City of Coral Gables v. Fluvia Corp.*, 185 So. 621 (Fla. 1939), where this Court allowed a back-assessment after the initial tax assessment had been invalidated by judicial decision.

We see confirmation of this ordinary meaning in judicial decisions that naturally use "escaped taxation" to mean "not taxed," even when the decisions do not explicitly define the phrase. For example, in *Schleman v. Connecticut General Life Insurance Co.*, 9 So. 2d 197, 200 (Fla. 1942), we wrote: "[T]he appellants question the right of the appellee to recover without showing that he owns no other property which has escaped taxation; none that is assessed at less than its full value; and none on which legally assessed taxes have not been paid." In *State v. Beardsley*, 82 So. 794, 820 (Fla. 1919), we wrote: "It may be said to hold this is to allow the property to escape taxation; it being shown by the record that it was not taxed in New York or elsewhere." *Id.* at 820. In *Superior Oil Co. v. Mississippi ex rel. Knox*, 280 U.S. 390, 395 (1930), Justice Holmes wrote: "The only purpose of the vendor here was to escape taxation. It was not taxed in Louisiana and hoped not to be in Mississippi." Similar examples abound, and courts' usage of the phrase seems almost universally one-sided—judges do not appear to use the

phrase "escaped taxation" to refer to property that has been under-taxed.[3]

The highest courts of other jurisdictions have also concluded that the concept of escaping taxation does not include being under-taxed due to a mistaken valuation of property. For example, in *Pheasant Lane Realty Trust v. City of Nashua*, 720 A.2d 73, 76 (N.H. 1998), the New Hampshire Supreme Court held that "underassessed property" is not "within the scope of property which escapes taxation." Similarly, in a case decided much closer in time to the enactment of section 193.092(1), the Mississippi Supreme Court observed that the "usual, ordinary, [and] popular signification" of property that has "escaped taxation" encompasses only cases "where there never has been any actual assessment at all of such property." *Adams v. Luce*, 39 So. 418, 419 (Miss. 1905).

---

3. One possible exception can be found in this Court's decision in *Root v. Wood*, 21 So. 2d 133 (Fla. 1945). But this Court criticized and receded from *Root* seven years later in *Simpson*, observing that in the earlier case "we offered no reason for giving to the words 'escaped taxation' a connotation different from the customary, common usage meaning of said words." *Simpson*, 59 So. 2d at 756.

Turning back to the facts of this case, we conclude that DeFrances's property did not "escape taxation" for purposes of section 193.092(1). Although the property was assessed based on an incorrectly low valuation, the Property Appraiser does not dispute the Second District's conclusion that "[t]he entire parcel and all the improvements were assessed and placed on the tax roll." *DeFrances*, 267 So. 3d at 530. And DeFrances timely paid her taxes. Accordingly, we agree with the Second District that in these circumstances section 193.092(1) does not give the Property Appraiser authority to back-assess DeFrances's property for 2014.

B.

The Property Appraiser criticizes the Second District's interpretation of section 193.092(1)—and by extension our interpretation here—as artificially constraining the text. He asks us to draw a distinction between underassessments caused by "clerical errors" and those caused by errors in judgment. He concedes that errors in judgment are not correctable through back assessments under section 193.092(1). But he urges us to hold that the statute requires property appraisers to impose back assessments when clerical errors result in "taxable value" being lost.

- 12 -

The problem with the Property Appraiser's arguments is that they are disconnected from anything the text says or fairly implies. The text does not speak of "taxable value" escaping taxation. Nor does the text mention—much less draw a distinction between—clerical errors and errors in judgment.[4] In fact, if we were to read the statutory phrase "escaped taxation" as encompassing the under-taxation of property, the text would give us no basis to categorically prohibit the use of back-assessments to correct errors in judgment. Through its use of the phrase "escaped taxation," the Legislature drew the line between property that has been taxed and property that has not been taxed, and that is the line that we must enforce.

---

4. The Property Appraiser's argument that we should decide this case based on a distinction between clerical errors and errors in judgment appears to borrow from case law interpreting a different statute, section 197.122, Florida Statutes (2015). *See Smith v. Krosschell*, 937 So. 2d 658, 661 (Fla. 2006) (explaining that this statute addresses "the correction of mathematical, administrative, or clerical error[s]" in the assessment roll but not errors in judgment). Section 197.122 relates to corrections to the assessment roll, not to the imposition of back taxes. And section 197.122 does not include the phrase "escaped taxation." The Property Appraiser does not rely on section 197.122 for the authority to impose the back-assessment at issue in this case.

The Property Appraiser leans heavily on this Court's decision in *Korash v. Mills*, 263 So. 2d 579 (Fla. 1972), but we think that case supports our interpretation of the statute. In *Korash*, a property appraiser made the mistake of assessing a parcel of land without also assessing a hotel newly built on the land. *Id.* When the property appraiser later issued a back-assessment taxing the hotel building, the taxpayer objected. *Id.* This Court upheld the back-assessment.

Critical to our analysis in *Korash* was our decision to treat the taxation of the land and of the hotel as separate assessments. We recognized that it would have been impermissible for the property appraiser simply to "increase . . . the valuation of the total property", *id.* at 580, and then to assess back taxes. In our view, as to the hotel, there had been no initial assessment—"there had been no billing at all on the improvement." *Id.* at 581. We described the facts as involving "a complete omission reached for the first time under s. 193.092." *Id.* at 581 n.3. Consistent with the interpretation we adopt today, our Court understood the statutory phrase "escaped taxation" to mean "not taxed."

- 14 -

It is true that one sentence of our *Korash* opinion says that "we have here an instance where the principal value of the property has indeed 'escaped' taxation which is fairly within the contemplation of" section 193.092. *Id.* at 581-82. But that was simply a recognition of the fact that the (untaxed) hotel had a substantially higher value than that of the underlying land. Before we wrote that sentence, though, we already had established that the hotel had "escaped taxation" because the property appraiser's error resulted in it not being taxed at all. By contrast, all of DeFrances's property (including any improvements) was taxed, albeit based on an incorrectly low valuation. The Property Appraiser's reliance on *Korash* is misplaced.

Finally, the Property Appraiser invokes three cases from the district courts of appeal: *Robbins v. First National Bank of South Miami,* 651 So. 2d 184 (Fla. 3d DCA 1995); *McNeil Barcelona Associates, Ltd. v. Daniel,* 486 So. 2d 628 (Fla. 2d DCA 1986); and *Straughn v. Thompson,* 354 So. 2d 948 (Fla. 1st DCA 1978). These cursory decisions (the two longest are three paragraphs) allowed back-assessments of taxes after a property appraiser corrected clerical errors. But only one of the decisions cites section

193.092(1), and none even mentions—much less interprets—the phrase "escaped taxation." We do not find these decisions persuasive or helpful for resolving the question presented here.[5]

## C.

Justice Lawson's dissent offers an interpretation of the statutory text that is more plausible than any interpretation developed by the Property Appraiser himself. With a focus on the beginning clauses of section 193.092(1), that dissent essentially maintains that the text itself *defines* "escaped taxation" to mean a situation "[w]hen it shall appear that any ad valorem tax might have been lawfully assessed or collected upon any property in the state, but that such tax was not lawfully assessed or levied." Justice Lawson reasons that, since our constitution and statutory law require property to be assessed at its just value, and since that

_____

5. Each party discusses and relies on rule 12D-8.006, which the Department of Revenue adopted to guide property appraisers' implementation of section 193.092. *See* Fla. R. Admin. Code R. 12D-8.006. The rule appears to embody the department's attempt to restate the holdings of *Okeelanta Sugar Refinery, Inc. v. Maxwell*, 183 So. 2d 567 (Fla. 4th DCA 1971) and *Korash*. We do not find the rule helpful to the Property Appraiser's case, and in any event our state constitution precludes us from deferring to the department's interpretation of section 193.092. Art. V, § 21, Fla. Const.

concededly did not happen in DeFrances's case, taxes were not "lawfully assessed" and DeFrances's property therefore "escaped taxation."[6]

We believe that the better reading of the statute treats these clauses as setting out the conditions under which property that "escaped taxation" must be back-assessed.  It is possible for property to escape taxation—that is, not be taxed—for reasons that are lawful.  For example, the property might have been exempt from taxation in previous years.  Or, in the case of personal property, it might not have existed or been subject to the taxing authority's

---

6.  As support for its interpretation, this dissent also points to the title to chapter 9180, noting this language in that title: "An Act to Authorize the Assessment and Collection of Taxes upon any Property in the State of Florida . . . as to which an Invalid Assessment . . . shall appear to have been made."  Putting aside the question whether the Property Appraiser's initial 2014 assessment of DeFrances's property was in any sense "invalid," we think that this portion of the Act's title is simply a reference to the following sentence in the statutory text:  "Provided, if real or personal property be assessed for taxes, and because of litigation delay ensues and the assessment be held invalid the taxing authorities, [sic] may re-assess such property within the time herein provided after the termination of such litigation."  Ch. 1923-9180, § 1, Laws of Fla. (1923).  This portion of the text speaks to a situation where property escapes taxation (is not taxed) because of a judicial decision invalidating an assessment; that is not what happened here.

jurisdiction. The clauses that the dissent focuses on clarify that, for a back-assessment to be required, the property that "escaped taxation" must also have been liable to taxation in the first place.[7]

If section 193.092(1) limits back-assessments to property that has "escaped taxation," then we think it unlikely that the Legislature would have sought to redefine that critical phrase through such indirect means and by giving it such an unnatural meaning. Justice Lawson's dissent gives the text a meaning that would have been a major innovation in our State's omitted property law and that would have displaced the well-entrenched ordinary meaning of "escaped taxation." Even if one assumes that this dissent has identified a plausible (though not better) interpretation of the statute, the Property Appraiser still loses. The "general rule" is that "statutes providing for taxation are to be construed strictly

---

7. Given our conclusion that DeFrances's property did not "escape taxation," we need not resolve the question whether the Property Appraiser's initial 2014 assessment was "lawful" for purposes of section 193.092(1). At a minimum, this case appears to have been litigated on the assumption that the initial 2014 assessment complied with the procedural requirements governing assessments and that DeFrances was obligated to pay her initial 2014 tax bill.

- 18 -

as against the state and in favor of the taxpayer." *Simpson*, 59 So. 2d at 758.

Legislatures know how to authorize do-overs when a property appraiser under-taxes property because of an incorrect valuation. To give just one example, Montana law allows back-assessments of taxes whenever it is discovered that "any taxable property of any person has in any year escaped assessment, been erroneously assessed, or been omitted from taxation." Mont. Code Ann. § 15-8-601(1)(a) (2021). Our own Legislature has the discretion to enact such a law, but we do not believe it has done so in section 193.092(1).

D.

Justice Polston's dissent takes issue with the premise that the entirety of DeFrances's property was assessed. That dissent instead claims that "4 lots" (out of the five lots into which the county's *preconversion* mass appraisal system had divided DeFrances's single tax parcel) were not assessed.

This argument contradicts the Property Appraiser's own position in this case. As we have explained, the Property Appraiser concedes that here "the entire parcel was (technically) assessed."

The Property Appraiser says that this case involves an error "essentially identical" to that in *Robbins*. And he then goes on to describe *Robbins* as a case where "[t]he entire parcel, as well as the improvements, were assessed and included on the tax roll, but the property was undervalued as a result of the [clerical] error." Finally, as we also have explained, the Property Appraiser acknowledged in discovery that DeFrances's "land was valued as a whole" and that therefore "[t]here is no specific, defined area of land that escaped taxation."

We will end where we began, by focusing on the text of the statute. Section 193.092(1) mandates back assessment of "such property as may have escaped taxation." Upon the initial assessment of DeFrances's property in 2014, the county's mass appraisal system treated that property as one parcel made up of one lot.[8] As the Property Appraiser has conceded, taxes were assessed on *all* of DeFrances's property. Section 193.092(1) simply does not apply.

---

8. *DeFrances*, 267 So. 3d at 527 n.1 ("The new system, however, used a different methodology (per front foot versus per lot) to arrive at the value of the parcel, which it treated as a single parcel made up of a single lot.").

## III.

Property has "escaped taxation" when it is not taxed, not when it is under-taxed because of a mistaken under-valuation. We approve the decision of the Second District Court of Appeal.

It is so ordered.

CANADY, C.J., and LABARGA and COURIEL, JJ., concur.
POLSTON, J., dissents with an opinion, in which LAWSON, J., concurs.
LAWSON, J., dissents with an opinion, in which POLSTON, J., concurs.
GROSSHANS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., dissenting.

Because of a computer error in the property appraiser's office, 4 lots that are part of 1 overall parcel were omitted from assessment, and the property homestead exemption was misapplied. The Florida Legislature, pursuant to section 193.092(1), Florida Statutes (2013), requires the property appraiser in these circumstances to correct this mistake with back assessments for the years missed so that the property does not escape taxation. The majority treats this circumstance, a partial

- 21 -

omission, the same as a change in judgment of the valuation or an underassessment. I disagree. This error involves the omission of assessment amounts relating to 4 lots, not a difference in how those 4 lots should be valued according to section 193.011, Florida Statutes (2013). Their inclusion in an overall parcel does not change how the statute applies. Accordingly, I agree with Petitioner Bill Furst (Furst) (the Property Appraiser of Sarasota County), the Property Appraiser Association, and the Florida Department of Revenue, that the partial omission should be assessed by backdating as required by the plain meaning of section 193.092(1) and our binding precedent in *Korash v. Mills*, 263 So. 2d 579 (Fla. 1972).

My disagreement with the majority is best demonstrated through a hypothetical: If the property appraiser, through a clerical error, valued a 1,000-acre parcel of land as 10 acres, the majority would agree with Respondent Susan DeFrances (DeFrances) that this error could not be back-assessed through section 193.092(1) because there was some assessment of the property as a whole, albeit at the clearly wrong 10 acres. I would apply the statute and

our precedent to conclude that 990 acres were omitted by error and thereby escaped taxation.

I respectfully dissent.

## I.  BACKGROUND

Since 1993, DeFrances has held a life estate in a large parcel of waterfront property in Sarasota County.  The property consists of 1 overall parcel made up of 5 separate lots.  Two of the lots contain single-family residences:  DeFrances lives in one and the other is a rental home.  From 1993-2013, the property's value was based on the sum of all 5 lots minus an ad valorem homestead tax exemption on 78% of the property.  In 2013, the property had an assessed value of $2,269,560.  Throughout DeFrances' ownership of the land, the value of the property was correctly assessed, and DeFrances paid the associated taxes.

At some point between 2013-2014, the Property Appraiser of Sarasota County converted the county's mass appraisal computer program from "AssessPro" to "Custom CAMA."  During the program conversion, what has been characterized as a clerical or administrative error occurred:  the transfer only accepted 1 value for DeFrances' property rather than all of the inputted factors from

AssessPro. In addition, DeFrances' homestead property exemption was erroneously applied to 100% of the property. As a result of these errors, the Property Appraiser "inadvertently and incorrectly" assessed the property at $302,400 for the 2014 tax year. The error went unnoticed, and a tax bill based on that amount was sent to DeFrances. She promptly paid the tax bill of $4,439.41.

The details of the error are explained in the affidavit of Jason Clevenger, a Deputy Sarasota County Property Appraiser, in support of Furst's motion for summary judgment. In the affidavit, Clevenger attested to the details of the clerical error, which are uncontroverted:

> 6. During 2013-2014, the Property Appraiser instituted a conversion of the Computer Aided Mass Appraisal program ("CAMA System") from AccessPro to Custom CAMA. In performing the conversion, many uploads of property parcel details were required. They were not accomplished in one omnibus "data transfer".
>
> 7. As part of the conversion, each classification of property was being assigned a consistent form of baseline data analysis or determination. As an example, all "tidally" influenced real property was being converted to a "front foot" basis from any other method of analysis, such as "acreage" or "lot". This process was intended to provide a more uniform method of analysis and result in producing a more uniform tax roll.

8. In the process of the conversion, the subject parcel, ID# 0108N15-0019, was not properly converted to the new CAMA System. Prior to the conversation [sic] for the 2013 tax roll, the subject parcel had been reflected on the Property Appraiser's records as five (5) lots contained under one parcel ID number. Lots 44 and 45 Buccaneer Bay Plat Book 24 page 36 were considered one lot as an improvement located on the site "straddled" the lot line between Lots 44 and 45. Lot 46 was classified as an improved lot and it contained a separate residential structure. Lot 42 and part of Lot 41, considered as one site, Lots 43 and 47, were shown as separate lots for assessment purposes. The total "Just" Value was $2,269,560, which was less than the 2012 Just Value of $3,675,400.00, which reduction reflected changes in the market.

9. *When the upload for the conversion of the subject parcel occurred, the system only accepted one value for the subject property, omitting the prior factors used in AssessPro rather than the data that produced five (5) assessable lots from the 2013 (and prior years) property records. This failure to convert resulted in the subject property being carried on the records as one (1) lot with an assigned value based upon one (1) lot of $65,000.00, not the five (5) lots as it had been previously assessed. In addition, the homestead exemption was applied to the entire property and not to 78% of the property as had been applied in 2013 and before.*

10. This error was not immediately detected and the 2014 TRIM Notice and 2014 tax bill each were issued upon the erroneous information. . . .

11. In July 2015, the error was detected when reconciling the 2015 tax roll to the 2014 tax roll.

(Emphasis added.)

When the Property Appraiser became aware of the error, he corrected the error in the CAMA system to reflect 1 parcel of 5 lots, and he corrected the homestead exemption. As a result of the update in the CAMA system, the Property Appraiser issued a Notice of Proposed Increase in Assessed Value and Taxes to DeFrances, which informed her that the 2014 assessment of her property was being retroactively increased to $2,473,518. She also received a bill from the Tax Collector for $26,254.30 in back taxes for 2014.

On December 4, 2015, DeFrances filed a 3-count declaratory judgment action against Petitioner Bill Furst, Property Appraiser of Sarasota County; Barbara Ford-Coates, Tax Collector of Sarasota County; and Marshall Stranburg, Executive Director of the Florida Department of Revenue, challenging (1) the 2014 back taxes, (2) the 2015 assessed value, and (3) the 2014 assessed value.

The circuit court granted Furst's motion for summary judgment as to all 3 counts. The circuit court concluded in its Final Summary Judgment that the Property Appraiser was obligated to correct the error under section 193.092(1) and to assess the property correctly by adjusting the appropriate factors that would have otherwise allowed the property to escape taxation:

# FINAL SUMMARY JUDGMENT

THIS CAUSE having come before the Court upon the Defendant, Bill Furst's Motion for Summary Judgment as to All Counts (in which Defendant, Department of Revenue joined), and Plaintiffs Cross-Motion for Summary Judgment, and the Court, having reviewed the pleadings and documents entered in evidence, having heard argument of counsel, and being otherwise fully informed in the premises, rules as follows:

## I. Uncontroverted facts of record:

A.　The Plaintiff, Susan K. DeFrances is the owner of a life estate on certain real property located at 7326 Captain Kidd Avenue in Sarasota, Florida and identified as Parcel No. 0109-15-0019 (the "Property"). The Property consists of one overall parcel made up of 5 separate lots. Two of the lots are improved with single family residences.

B.　Prior to 2014, the Property was assessed as one parcel consisting of 5 separate lots, with the assessment based on the value of 5 lots, together with the improvements on two of the lots. The Plaintiff was granted an ad valorem real property homestead tax exemption on 78% of the Property.

C.　During the years 2013-2014 the Property Appraiser instituted a conversion in their mass appraisal computer program from "AssessPro" to "Custom CAMA".

D.　During the conversion from "AssessPro" to "Custom CAMA" a clerical/administrative error occurred in that the transfer only accepted one value for the Property, rather than all the

inputted factors from "AssessPro". In addition, the homestead exemption was applied to the entire property (instead of only 78% of the property). (The subject clerical/administrative error described herein shall be referred to as "the Error").

E.   As a result of the Error, the Property Appraiser inadvertently, and incorrectly, assessed the Property of "one parcel of five lots" as "one parcel of one lot", with an incorrect total assessed value of $302,400.00. A tax bill for an amount based upon the one parcel as one lot was generated and provided to the Plaintiff utilizing the miscalculated assessment. Plaintiff promptly paid the tax bill.

F.   The Error is a clerical/administrative error. The Error resulted in a portion of the Property escaping taxation.

G.   When the Property Appraiser became aware of the Error, the Property Appraiser corrected the Error, and updated the Custom CAMA system to show the one parcel of five lots that make up the assessed parcel to establish an accurate assessment of the Property. As a result of the correction of the error and update of the Custom CAMA system, the Property Appraiser issued a notice of proposed increase in assessed value to the Plaintiff.

H.   Following the increase in the assessed value of the Property, the Plaintiff commenced the instant case, which includes three Counts summarized as follows:

Count I: seeking cancellation of the 2014 back assessment, premised on the argument that, because the Property was

- 28 -

assessed in 2014, the Property did not "escape taxation" as that phrase is used in §193.092(1).

Count II: seeking to limit the 2015 assessed value of the Property, pursuant to the "Save our Homes Cap" (codified in Article VII, Section 4 of the Florida Constitution and Section 193.155, Florida Statutes), to no more than 1.5% more than the erroneous 2014 assessment which resulted from the Error.

Count III: seeking to apply the "Save our Homes Cap" (codified in Article VII, Section 4 of the Florida Constitution and Section 193.155, Florida Statutes), to the entire property.

## II. Conclusions of law.

A.   The Property Appraiser was authorized to correct the Error pursuant to Fla. Stat. §193.092(1).

B.   The Property Appraiser was authorized, and obligated, to correct the Error and assess the Property correctly by adjusting the factors applicable to the parcel for the 2014 assessment and the resulting assessment that would have otherwise allowed a portion of the Property to escape taxation.

C.   The "Save Our Homes" cap (codified in Article VII, Section 4 of the Florida Constitution and Section 193.155, Florida Statutes) limits the increase in the annual assessed value of homestead residences to 3% or the change in

- 29 -

the Consumer Price Index, whichever is less and only applies to the assessment of the homestead.

## III. Holding.

A. The Property Appraiser properly assessed the Property at a capped value of $1,983,725 for 2014. The Property Appraiser correctly assessed the Property at a capped value of $2,054,128 for 2015.

B. The Court finds that the Property Appraiser properly apportioned that portion of the Property used for commercial purposes from the homestead portion of the Property.

C. The uncontroverted evidence submitted by the Property Appraiser established that the Property Appraiser correctly followed Florida law when calculating the increase for both the 2014 and 2015 assessments of the Property. The Property Appraiser correctly limited the increase on the homestead portion (78%) of the total assessed value by the Save Our Homes Cap, and limited the increase on the commercial portion (22%) to 10% (as required under §193.1554, Florida Statutes).

Therefore, it is **ORDERED AND ADJUDGED:**

Bill Furst's Motion for Summary Judgment is **GRANTED** as to all Counts, and the Plaintiffs Cross-Motion for Summary Judgment is **DENIED**. Final Summary Judgment is therefore entered in favor of Defendants Bill Furst and the Department of Revenue, as to all Counts. It is therefore ADJUDGED that Plaintiff take nothing by this action and that Defendants shall go hence without day.

I agree with the trial court's ruling.

## II. ANALYSIS

Section 193.092(1), the relevant Florida Statute at issue, states:

> (1) When it shall appear that any ad valorem tax might have been lawfully assessed or collected upon any property in the state, but that such tax was not lawfully assessed or levied, and has not been collected for any year within a period of 3 years next preceding the year in which it is ascertained that such tax has not been assessed, or levied, or collected, then the officers authorized shall make the assessment of taxes upon such property in addition to the assessment of such property for the current year, and shall assess the same separately for such property as may have escaped taxation at and upon the basis of valuation applied to such property for the year or years in which it escaped taxation, noting distinctly the year when such property escaped taxation and such assessment shall have the same force and effect as it would have had if it had been made in the year in which the property shall have escaped taxation, and taxes shall be levied and collected thereon in like manner and together with taxes for the current year in which the assessment is made. But no property shall be assessed for more than 3 years' arrears of taxation, and all property so escaping taxation shall be subject to such taxation to be assessed in whomsoever's hands or possession the same may be found, except that property acquired by a bona fide purchaser who was without knowledge of the escaped taxation shall not be subject to assessment for taxes for any time prior to the time of such purchase, but it is the duty of the property appraiser making such assessment to serve upon the previous owner a notice of intent to record in the public

records of the county a notice of tax lien against any property owned by that person in the county. Any property owned by such previous owner which is situated in this state is subject to the lien of such assessment in the same manner as a recorded judgment. Before any such lien may be recorded, the owner so notified must be given 30 days to pay the taxes, penalties, and interest. Once recorded, such lien may be recorded in any county in this state and shall constitute a lien on any property of such person in such county in the same manner as a recorded judgment, and may be enforced by the tax collector using all remedies pertaining to same; provided, that the county property appraiser shall not assess any lot or parcel of land certified or sold to the state for any previous years unless such lot or parcel of lands so certified or sold shall be included in the list furnished by the Chief Financial Officer to the county property appraiser as provided by law; provided, if real or personal property be assessed for taxes, and because of litigation delay ensues and the assessment be held invalid the taxing authorities, may reassess such property within the time herein provided after the termination of such litigation; provided further, that personal property acquired in good faith by purchase shall not be subject to assessment for taxes for any time prior to the time of such purchase, but the individual or corporation liable for any such assessment shall continue personally liable for same. As used in this subsection, the term "bona fide purchaser" means a purchaser for value, in good faith, before certification of such assessment of back taxes to the tax collector for collection.

Applying the plain terms of the statute to these facts, any property that is unlawfully assessed and escapes taxation qualifies under the statute. As the trial court ruled, ad valorem tax might have been lawfully assessed upon the 4 lots but it was not. I agree

- 32 -

with Justice Lawson's separate dissenting opinion explaining this provision of section 193.092(1). However, the majority erroneously dismisses application of this provision by interpreting the phrase "escaping taxation" as applying only to property that is wholly omitted, not partially omitted. Majority op. at 9. But there is no language in the statute that makes it applicable only to entire omissions from assessment, and such interpretation is contrary to this Court's precedent.

In *Korash v. Mills*, 263 So. 2d 579, 580 (Fla. 1972), due to a clerical error, the property appraiser omitted a newly constructed hotel. The property record card for the land was accidentally separated from the property record card for the improvements, causing only the value of the land to be entered on the tax roll. *Id.* As a result, there was not a composite assessed value of both land and improvements. *Id.* Upon later discovery of the error, the property appraiser attempted to back assess the value of the improvements, and the taxpayer contested the back assessment. *Id.* This Court upheld the back assessment, concluding that "we have here an instance where the principal value of the property has indeed 'escaped' taxation which is fairly within the contemplation

- 33 -

of" section 193.092 and that "[n]either is it a *total* escape of taxation but it is a partial one." *Id.* at 581. This Court further explained, "If there is no new judgment being exercised, and property not theretofore included is just late in being enrolled and billed . . . it *is* a proper assessment and is payable . . . as 'escaped' property." *Id.* The Court distinguished a permissible basis for a back assessment by the property appraiser (the erroneous omission of a hotel from taxation) from an impermissible basis (a "change in judgment" such as a change in valuation after the certification of the tax roll for the year). *Id.* at 581-82. This Court also explained that its "holding is consistent with the basic purpose of taxation: That all taxpayers share in proportion to their assessments, the support of their government and the protection and services afforded to their property and to themselves, and that none bears an added or unfair burden by reason of other taxpayers not paying their just share." *Id.* at 582.

The majority attempts to distinguish *Korash* as somehow supportive of its interpretation in this case, *see* majority op. at 14, and incorrectly states that all of DeFrances' property was assessed, *see* majority op. at 3, 15. I disagree. This Court in *Korash*

- 34 -

explained the case as involving not "a *total* escape of taxation but . . . a partial one." 263 So. 2d at 581. Similar to the hotel in *Korash* that escaped taxation because it was not included, 4 of DeFrances' lots escaped taxation as they were similarly not included. The majority states that this argument contradicts the Property Appraiser's own position in this case, citing one line of the Property Appraiser's Initial Brief stating, "the entire parcel was (technically) assessed." Majority op. at 19. However, I do not believe this is an accurate depiction of the Property Appraiser's argument in this case. The entire quote from the Initial Brief is as follows: "In the present case, while the entire parcel was (technically) assessed, it was assessed based on clerical errors that resulted in the parcel's component parts (multiple lots) being ignored or forgotten." Initial Br. at 22-23. The Property Appraiser's Initial Brief further provides:

> Under "AssessPro" the Property was inputted as a single parcel with five lots, such that the value of all five lots was attributed to the single parcel. During the conversion from "AssessPro" to "Custom CAMA" a clerical error occurred as to the value of the land in that the value of the entire parcel was calculated based on only one of five lots, rather than all of the lots. Moreover, certain factors were not included in the land value calculation (by way of example, the waterfront factor),

- 35 -

which resulted in the property being carried on the records as one lot with the assigned value of only one lot, rather than all five as had been historically assessed.

Initial Br. at 8. The Property Appraiser's Initial Brief also argued, "In this case the particular error resulted in a parcel of five specifically identifiable lots being assessed based only on the value of one lot. The value of four lots was effectively skipped or forgotten." Initial Br. at 17. Returning to my earlier hypothetical, when a clerical error on a 1,000-acre property results in valuing it at 10 acres, the 990 acres are omitted from assessment and escape taxation. As the trial court ruled here, the 4 lots omitted through a clerical error from the total parcel of 5 lots resulted in escaped taxation according to a plain reading of the statute.

This Court's decision in *Korash* is also the basis by which the Florida Department of Revenue has defined "escape taxation" in Florida Administrative Code Rule 12D-8.006 titled, "Assessment of Property for Back Taxes." Citing *Korash* and the applicable statute, the rule states:

> (1) "Escape taxation" means to get free of tax, to avoid taxation, to be missed from being taxed, or to be forgotten for tax purposes. Improvements, changes, or additions which were not taxed because of a clerical or some other error and are a part of and encompassed by a

- 36 -

real property parcel which has been duly assessed and certified, should be included in this definition if back taxes are due under Section 193.073, 193.092 or 193.155(8), F.S. Property under-assessed due to an error in judgment should be excluded from this definition. *Korash v. Mills*, 263 So. 2d 579 (Fla. 1972).

Fla. Admin. Code R. 12D-8.006(1).

Contrary to the majority's opinion and the Second District's decision below, the 4 lots missing from the parcel at issue fit squarely within this definition. Rule 12D-8.021 of the Florida Administrative Code explains in detail the distinction between errors subject to correction versus those that are changes in the judgment of the property appraiser.[9] The omission of these 4 lots is subject to correction and back assessment as a clerical error.

---

9. Rule 12D-8.021(2) provides in pertinent part that:

    (a) The following errors shall be subject to correction:
        1. The failure to allow an exemption for which an application has been filed and timely granted pursuant to the Florida Statutes.
        2. Exemptions granted in error.
        3. Typographical errors or printing errors in the legal description, name and address of the owner of record.
        4. Error in extending the amount of taxes due.
        5. Taxes omitted from the tax roll in error.
        6. Mathematical errors.
        7. Errors in classification of property.

8.  Clerical errors.
9.  Changes in value due to clerical or administrative type errors.

. . . .

(b) The correction of errors shall not be limited to the preceding examples, but shall apply to any errors of omission or commission that may be subsequently found.

. . . .

(d) The following is a list of circumstances which involve changes in the judgment of the property appraiser and which, therefore, shall not be subject to correction or revision, except for corrections made within the one-year period described in subparagraph (2)(a)24. of this rule section.  The term "judgment" as used in this rule section, shall mean the opinion of value, arrived at by the property appraiser based on the presumed consideration of the factors in Section 193.011, F.S., or the conclusion arrived at with regard to exemptions and determination that property either factually qualifies or factually does not qualify for the exemption.  It includes exercise of sound discretion, for which another agency or court may not legally substitute its judgment, within the bounds of that discretion, and not void, and other than a ministerial act.  The following is not an all inclusive list.

1.  Change in mobile home classification not in compliance with attorney general opinion 74-150.
2.  Extra depreciation requested.
3.  Incorrect determination of zoning, land use or environmental regulations or restrictions.
4.  Incorrect determination of type of construction or materials.
5.  Any error of judgment in land or improvement valuation.
6.  Any other change or error in judgment, including ordinary negligence which would require the exercise of appraisal judgment to determine the

## III.  CONCLUSION

Because a computer error caused 4 lots to escape taxation, I would hold that the back assessment was required by the plain meaning of section 193.092(1) and our binding precedent in *Korash*, quash the Second District's decision, and remand with instructions to affirm the trial court's final summary judgment.

LAWSON, J., concurs.

LAWSON, J., dissenting.

This case presents a straightforward statutory construction question: When, under section 193.092(1), Florida Statutes (2020), must "the officers authorized" to assess and collect "ad valorem tax" on "property in the state" assess and collect tax for a prior year "in addition to the assessment of such property for the current year"?

---

effect of the change on the value of the property or improvement.
7.  Granting or removing an exemption, or the amount of an exemption.
8.  Reconsideration of determining that improvements are substantially complete.
9.  Reconsideration of assessing an encumbrance or restriction, such as an easement.

Fla. Admin. Code R. 12D-8.021(2).

- 39 -

The plain language of the statute provides the straightforward answer.

In unambiguous language, section 193.092(1) states that the assessing authority must assess "back" taxes[10] "[w]hen it shall appear that *any* ad valorem tax might have been lawfully assessed or collected upon any property in the state, but that such tax was not lawfully assessed or levied, and has not been collected," and provides a three-year limit on back assessments. *Id.* (emphasis added).

"Lawfully" means "being in harmony with the law" or as "constituted, authorized, or established by law." *Merriam-Webster's Collegiate Dictionary* 705 (11th ed. 2014). Florida's Constitution commands that "[b]y general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation," art. VII, § 4, Fla. Const., with some exceptions not applicable in this case. "Just valuation" is synonymous with "fair

---

10. Section 193.092(1) appears under the title "Assessment of property for back taxes." And "back taxes" describes taxes assessed and collected after the time set for the assessment by statute. In Florida, ad valorem taxes are assessed annually. § 192.042, Fla. Stat. (2020).

market value." *Mazourek v. Wal-Mart Stores, Inc.*, 831 So. 2d 85, 88 (Fla. 2002) (citing *Valencia Ctr., Inc. v. Bystrom*, 543 So. 2d 214, 216 (Fla. 1989)). Consistent with article VII, section 4(d)(1) of the Florida Constitution, general law requires all sixty-seven property appraisers to annually assess all property in their respective counties, *see* §§ 192.011, .042, Fla. Stat. (2014), and details the factors that a property appraiser "shall take into consideration" in "arriving at just valuation" as required by the Florida Constitution, § 193.011, Fla. Stat. (2014). The law requires that this "just" valuation serves as the basis for the property taxes collected on all non-exempt properties. *See* art. VII, § 4, Fla. Const.

Therefore, property taxes would be levied as established by or in harmony with Florida law only if they were based upon a just value assessment using the factors set forth in section 193.011.

What the law explained above means for this case is that section 193.092(1) required a back assessment in 2015 when the Sarasota County Property Appraiser discovered the 2014 erroneous valuation of a multi-million-dollar five-lot waterfront parcel at a fraction of its just value in violation of section 193.011. This is because it then "appear[ed]" that "ad valorem tax [that] might have

- 41 -

been lawfully assessed" pursuant to section 193.011 had not been "lawfully assessed." § 193.092(1), Fla. Stat. Because the property was not valued in accordance with Florida law in 2014, ad valorem tax that might have been lawfully assessed and collected was neither assessed nor collected. It also appears that the appraiser inadvertently extended the homestead tax exemption to nonexempt property, providing a second reason why ad valorem tax that might have been lawfully assessed and collected on this property was not assessed or collected in 2014. *See* §§ 196.001, .015-.061, Fla. Stat. (2020) (explaining that exemptions are not extended to nonexempt property and detailing the processes appraisers must follow to assure that the homestead exemption is not extended to nonhomestead property).

In reaching its contrary conclusion, the majority essentially rewrites section 193.092(1) as follows:

> When it shall appear that any ~~ad valorem tax~~ <u>real property</u> might have been lawfully assessed <u>and taxed</u> ~~or collected upon any property~~ in the state, but that such <u>property</u> ~~tax~~ was not lawfully assessed . . . then the officers authorized shall make the assessment of taxes upon such property in addition to the assessment of such property for the current year, and shall assess the same separately for such property . . . .

- 42 -

In other words, the majority reads the statute as requiring back assessment only when the assessing authority discovers that it has missed an entire parcel altogether, such that no tax is assessed or collected on the property. The majority justifies this rewrite based upon its narrow focus on, and analysis of, the phrase "escaped taxation," which appears after the operative language of the statute discussed above. § 193.092(1), Fla. Stat.

However, reading the statute as a whole, it is clear that "escaped taxation" is nothing more than a shorthand reference to the conditions requiring a back assessment—which are plainly described at the beginning of the statute. In pertinent part, the statute reads:

> When it shall appear that any ad valorem tax might have been lawfully assessed or collected upon any property in the state, but that such tax was not lawfully assessed or levied, and has not been collected for any year within a period of 3 years next preceding the year in which it is ascertained that such tax has not been assessed, or levied, or collected, then the officers authorized shall make the assessment of taxes upon such property in addition to the assessment of such property for the current year, and shall assess the same separately for such property as may have escaped taxation at and upon the basis of valuation applied to such property for the year or years in which it escaped taxation, noting distinctly the year when such property escaped taxation and such assessment shall have the same force and

- 43 -

effect as it would have had if it had been made in the year in which the property shall have escaped taxation . . . .

*Id.*

The statute's history underscores why the phrase "escaped taxation" must be read to refer back to tax that could have been but was not "lawfully assessed or collected." The majority is correct that Florida's 1895 tax statute only required back assessment whenever an "assessor . . . discover[s] that any land in his county was omitted in the assessment roll of either or all of the three previous years." Ch. 4322, § 24, Laws of Fla. (1895). Therefore, under the 1895 statute, only land that was missed entirely—that had escaped valuation altogether—was subject to back assessment. The 1899 enactment that added the phrase "escaped taxation" replaced the language limiting back assessments to land that had escaped *valuation* altogether and instead required back assessment upon discovery of land that had "*for any reason, escaped taxation for all or any of the three previous years*." Ch. 4663, § 1, Laws of Fla. (1899) (emphasis added). Were we deciding this case in 1899, the debate would properly center on whether back assessment was required for land that had escaped some tax because the valuation

had not been conducted in accordance with the law (as arguably suggested by the "for any reason" language) or whether back assessment was still required only for land that wholly escaped valuation (as clearly directed by the 1895 language that had been replaced).

However, any potential ambiguity was cleared up in 1923 when the Legislature enacted chapter 9180, Laws of Florida, titled:

> AN ACT to Authorize the Assessment and Collection of Taxes upon any Property in the State of Florida upon which Ad Valorem Taxes could have been Lawfully Assessed for any Year or Years within three Years Previous to the Year in which such Assessment shall be made when the Taxes which might have been Lawfully Assessed against such Property for any cause have not been Paid, *or to which an Invalid Assessment* or Sale shall appear to have been made.

Ch. 9180, Laws of Fla. (1923) (emphasis added).

Although the "or to which an Invalid Assessment . . . shall appear to have been made" language is not repeated in the text, it does demonstrate that the Legislature understood that its operative language would require back assessment whenever land "escaped taxation" due to an invalid assessment, even if some tax had been

paid.[11]  Additionally, the 1923 enactment unambiguously placed a

duty on the appraiser to assess back taxes "[w]hen it shall appear

that any ad valorem tax might have been lawfully assessed or

collected upon any property in the State of Florida, but that such

tax was not lawfully assessed or levied."  Ch. 9180, § 1.  This

language is materially identical to the operative language in the

current version of section 193.092(1).  It was with the 1923 act that

Florida's Legislature replaced the "for any reason, escaped taxation"

language with the operative language analyzed above and retained

the phrase "escaped taxation" in a subsequent clause as a

shorthand reference to the unambiguously stated conditions under

which an assessing authority "shall" back assess.  *See* ch. 9180,

§ 1, Laws of Fla. (1923).

---

11.  Attempting to shift the focus off of the invalidity of the assessment at issue, the majority posits that this portion of the 1923 act's title refers to statutory text that extends the deadline to back assess following a judicial determination of invalidity.  *See* majority op. at 17 n.6.  Putting aside that the statute's plain language compels us to focus on the invalidity of the assessment, the majority cannot be correct, or else the Legislature would have used the words "were held to have been made" rather than "shall appear to have been made."

As we explained in *Ham v. Portfolio Recovery Assocs., LLC*, 308

So. 3d 942, 946–47 (Fla. 2020), when interpreting statutes,

> we follow the "supremacy-of-text principle"—namely, the
> principle that "[t]he words of a governing text are of
> paramount concern, and what they convey, in their
> context, is what the text means." Antonin Scalia & Bryan
> A. Garner, *Reading Law: The Interpretation of Legal Texts*
> 56 (2012). We also adhere to Justice Joseph Story's view
> that "every word employed in [a legal text] is to be
> expounded in its plain, obvious, and common sense,
> unless the context furnishes some ground to control,
> qualify, or enlarge it." *Advisory Op. to Governor re*
> *Implementation of Amendment 4, the Voting Restoration*
> *Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting
> Joseph Story, *Commentaries on the Constitution of the*
> *United States*157-58 (1833), *quoted in* Scalia & Garner,
> *Reading Law* at 69).

Adherence to these principles of textual analysis compels the

conclusion that section 193.092(1) requires back assessment under

the circumstances of this case. No party disputes that Florida law

required the property appraiser to assess this property at fair

market value. No party disputes that the appraiser failed in this

duty such that the property was not assessed at just value as

lawfully required. As a result, the property escaped taxation that

was required to be assessed and collected by Florida law. While the

majority is correct that we should "discern the text's meaning as it

would have been understood by a reasonable reader, fully

competent in the language, at the time of its enactment," majority op. at 6, there is nothing to suggest that the operative words "lawfully assessed" have changed in meaning over the last century; that the phrase "escaped taxation" was in any way intended to override the operative language of the statute; or that "escaped taxation" would have been understood in context as having the very constraining meaning ascribed to it by the majority.

I would quash the decision of the Second District Court of Appeal and remand for further proceedings in which the statute is applied as plainly written.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal
    Class of Constitutional Officers

    Second District - Case No. 2D17-3973

    (Sarasota County)

J. Geoffrey Pflugner, Anthony J. Manganiello, Jason A. Lessinger, and Mark C. Dungan of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, Florida,

    for Petitioner, Bill Furst, as Property Appraiser of Sarasota County, Florida

Ashley Moody, Attorney General, and Robert P. Elson, Senior Assistant Attorney General, Tallahassee, Florida,

for Petitioner, Jim Zingale, as Executive Director of the State of Florida Department of Revenue

Sherri L. Johnson of Johnson Legal of Florida, P.L., Sarasota, Florida,

for Respondent, Susan K. DeFrances

Loren E. Levy and Stuart W. Smith of The Levy Law Firm, Tallahassee, Florida,

for Amicus Curiae The Property Appraisers' Association of Florida, Inc.